**UNITED STATES of America ex rel. George L. SPEARS**

**v.**

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.**

**Misc. No. 3447.**

United States District Court
E. D. Pennsylvania.

May 19, 1967.

---

9. See opinion of Mr. Justice Hewson—Exhibit B to affidavit of Charles S. Haight, Esq. of December 1, 1966, submitted herein.

John W. Packel, Asst. Voluntary Defender, Philadelphia, Pa., for relator.

Charles A. Haddad, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

OPINION AND ORDER

JOHN W. LORD, Jr., District Judge.

This is a petition for writ of habeas corpus. Relator alleges that he received

ineffective assistance of counsel (in both Indictments 1549 and 1555). He further contends that a confession was admitted into evidence against him without a proper determination of its voluntariness (as to Indictment 1549), and that a prior withdrawn guilty plea was admitted into evidence against him (as to Indictment 1555). We issued an order to show cause upon the respondent, and after a detailed consideration of the record and legal questions held an evidentiary hearing. Counsel was appointed to represent relator at the hearing. Briefs were submitted at the hearing, and supplemental briefs were later received. We have determined that the writ should issue.

The petition is concerned with two separate convictions, based on indictments charging relator with aggravated robbery. Relator waived jury trials on both indictments and the two trials were held within a short time of each other. Spears was sentenced for both on the same day. Because of the different problems involved with each conviction, we will consider them separately.

■ Preliminary to a discussion of the merits of the petition, we must dispose of two jurisdictional matters. Relator has exhausted his state remedies, 28 U.S.C.A. § 2254, by appeal to the Superior and Supreme Courts of Pennsylvania, on both convictions challenged here. The appeals were unsuccessful. The question has also presented itself as to the nature of relator's custody. It is clear that the writ is not available to test the legality of detention threatened in the future. Palumbo v. State of New Jersey, 334 F.2d 524, 526 (3rd Cir. 1964). Relator is presently serving the unexpired portion of a previous sentence imposed for a crime not included in this petition. He was paroled however and would have fulfilled the term of that sentence while on parole, but for the convictions on the two crimes forming the basis for this petition. Upon being convicted, relator was ordered to serve his "back-time" on the previous sentence before he would begin to serve the sentences for the present crimes. The convictions are a violation of parole, and therefore the cause of his present detention. 61 P.S. § 331.21a. Since relator's present custody was caused by the convictions which he alleges were unconstitutionally obtained, the writ can issue. Ex Parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1940); United States of America ex rel. Gaito v. Maroney, 324 F. 2d 673 (3rd Cir. 1963). The merits of the issuance of the writ may now properly be considered.

## BILL OF INDICTMENT NUMBER 1549

Relator was brought to trial in April, 1964 on indictment No. 1549 charging the aggravated robbery of a savings association. He was represented by counsel (whom he claims was ineffective) and jury trial was waived. The Commonwealth's first witness was the victim of the robbery, a teller at the savings association, who identified Spears and two other defendants as the robbers. The next witness was a police officer who read into evidence an incriminating statement made by the relator. No objection to the confession was made at this time. The Commonwealth then rested. Spears took the witness stand in his own behalf and testified that he was ill and had remained in his room from December 16, 1963 to January 3, 1964, and therefore could not have committed the robbery which took place on December 23, 1963. Spears contended that three witnesses, including his parole officer, could testify that he was so confined during this time. These witnesses were never called, although it seems that some effort was made to find them. Spears then testified that the statement which he signed was not a transcription of any question and answer period he had with the police. He claimed that it was already prepared by the police who had been looking for him prior to his arrest. When he learned that he was the subject of police inquiry he went to his apartment where he was living with a friend named Brown, and a woman. The woman told him that the police had been to the apartment looking for him shortly before his arrival. The police allegedly ransacked

the apartment and finally left, taking Brown in custody and telling the woman that they would keep Brown in custody until Spears surrendered himself. Spears went directly to the police station where he was placed under arrest. He was asked to sign the statement, which he insists was already prepared, containing a narrative of the robbery and implicating two other defendants. He testified that he denied commission of any crime but was intimidated into signing the statement. At this point in the trial, the following colloquy took place:

"MR. ROSENWALD (District attorney): If your Honor pleases, he is not testifying. He is doing the work of his attorney. He is arguing the case.

"THE DEFENDANT (SPEARS):

My attorney, sir, has not had over ten hours to know about this case. I am being tried.

"THE COURT: We are going to try this case as the law provides. We cannot go on and on like a babbling brook.

"THE DEFENDANT: I consider what I'm saying has pertinence to the case.

"THE COURT: We are not going to argue with you. You will tell whether you were there, whether you were not there, whether you did it or whether you did not do it." (N.T. 4/21/64, pp. 67, 68)

The record contains no further reference to this question of the voluntariness of the confession. There was no ruling by the court. Relator was eventually found guilty.

 Relator contends that this statement confessing guilt of the crime alleged in Bill No. 1549 was improperly received into evidence without any separate determination of the question of voluntariness. We agree. The trial preceded Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Therefore, the absence of a formal objection by relator's attorney in these circumstances cannot be considered a voluntary waiver,

where in fact, the defendant personally repudiated the confession as soon as he was able. When relator took the witness stand a great deal of his testimony concerned this statement, and he unequivocally stated that although he signed the confession, he did not do so voluntarily. The question of the voluntariness of the statement was certainly put in issue. It is of no moment that the use of the confession may not have been prejudicial to the defendant. Jackson v. Denno, supra, has held that it was fundamentally unfair to allow the same jury which would ultimately pass on the guilt or innocence of the accused to simultaneously determine the issue of voluntariness of a statement made by that defendant. The decision required that the trial judge first determine the question, by a hearing separate from the jury, and then if the judge finds that the confession was voluntary, it could be submitted to the jury. This decision has been held to be retroactive in Pennsylvania. Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 206 A.2d 283 (1965). The primary distinction between Jackson and the present case is that Spears was tried by a judge without a jury. The question for our decision is whether Jackson requires a separate hearing on the issue of voluntariness where the fact finder is a judge rather than a jury. We think that the decision in Jackson requires such a result. The function of a judge trying a case without a jury is twofold: he is a finder of fact, as well as an arbiter of the law. The responsibility is burdensome. But the task becomes too great when we require a judge who has heard evidence of guilt, to objectively and coldly assess a distinct issue as to the voluntariness of the confession. Objectivity cannot be guaranteed, and reliability must be questioned. Jackson properly construed, prohibits the finder of fact from passing on the voluntariness of a confession since its decision as to voluntariness could be colored by evidence as to guilt. The precise issue presented here was considered in United States ex rel. Owens v. Cavell, 254 F.Supp. 154 (M.D.Pa.1965).

The court held that a judge cannot at the same time hear evidence of guilt, and evidence pertaining to the voluntariness of a confession, without violating the rule of Jackson v. Denno. The court granted the writ in *Owens* recognizing that a judge, like a jury, could not properly determine voluntariness. The decision found support in the analogous case of Hutcherson v. United States, 122 U.S.App.D.C., 51, 351 F.2d 748 (1965). In *Hutcherson* the question arose during a separate hearing being held by the trial judge, in the absence of a jury, on the issue of voluntariness. He asked questions pertaining to the truth of the facts contained in the confession. The Court of Appeals found it necessary to order a separate hearing to determine the voluntariness question, since the trial judge's determination was obviously tainted with the reliability of the confession. Jackson v. Denno requires a procedure designed to insure a reliable and clear-cut determination of the voluntariness of the confession and the record should show the judge's conclusions in this regard and his findings upon the underlying facts. 378 U.S. at 378, 84 S.Ct. 1774. The relator here has not had such a reliable and clear-cut determination. In fact, the record nowhere discloses *any* determination of the issue of voluntariness. See Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593. Of course, the presence of an explicit judicial determination in the record of Spears' trial would not cure the constitutional defect. When the issue of voluntariness was raised, the court had already heard testimony of guilt. It is impossible to objectively and reliably determine that the confession was voluntary after considering his guilt. Were this merely a hearing on voluntariness, *Hutcherson* would prevent the judge from deciding the issue. The only method, consistent with *Jackson* and *Hutcherson* which the court could have adopted during Spears' trial was upon learning that he placed the confession in issue, to order a separate hearing to be held by another judge unfamiliar with the case and testi-mony. The reliability of the hearing demanded by *Jackson* was not present in relator's trial, and therefore, the writ must issue for this reason alone as to the finding of guilty under Bill No. 1549. I shall hereafter discuss relator's contention as to ineffectiveness of counsel.

### BILL OF INDICTMENT NUMBER 1555

The relevant facts concerning the trial upon this bill of indictment and the conviction begins before the trial commenced, while relator was on trial for Bill No. 1549 previously considered in this opinion. After Spears had concluded his testimony, the defense and prosecution both rested. In chambers it was decided that the Commonwealth would recommend a certain sentence if Spears would testify against one of the co-defendants, and if Spears would plead guilty to four bills of indictment, including 1549 and 1555. The plea of guilty was taken on all four bills. Shortly thereafter a hearing was held in chambers and Spears notified the court that he would like to change the pleas. He stated to the court:

"I did not want to enter guilty pleas. I did not want to. I only talked to this man [his attorney] for fifteen minutes, and only five minutes before the trial. He will verify that he has had no time to familiarize himself with my case. He couldn't give me—

"It was strictly fear because I didn't know what he was talking about because I was asking him and answering him yes and no. I didn't even have a hearing and its a tremendous pressure.

"I do not want to plead guilty. I never wanted to plead guilty. I pleaded not guilty all along:

"I guess he thought he was trying to help me but I'd rather whatever happened would happen. I don't want to enter a plea.

"I've been out six times for arraignment. I never entered pleas." (N.T. 4/21/64, pp. 91–92)

He was permitted, at that time, to withdraw the guilty pleas. The court later

adjudicated his guilt on Bill No. 1549, after he failed to produce any witnesses though he had been given some time to do so.

Spears came to trial on Bill No. 1555, charging aggravated robbery of a grocery store, after first pleading guilty to the charge and later having withdrawn the plea. Three other defendants were tried with Spears for this crime. Jury trial was waived. Spears was represented by an attorney who was appointed minutes before the trial began. The Voluntary Defender had previously entered his appearance for Spears, but hesitated to represent him at the trial when it became obvious that a conflict of interest might develop. The Defender also represented one of the other defendants and was permitted to withdraw his representation of Spears. Oddly, the Defender did not represent Spears when he pleaded guilty to this bill of indictment; he acted on the advice of the attorney trying his case on Bill No. 1549, who was completely unfamiliar with the 1555 case. The Commonwealth's evidence demonstrated that a robbery was committed by the defendant, Cook, who was identified by the victim of the robbery. Immediately after the robbery was committed another defendant, Woodford, entered the store in a suspicious manner, apparently to delay a call to the police by the victim for help. Woodford had given a statement to the police which was introduced solely against him, in which he confessed his participation in the robbery. A police officer then took the stand and testified that Spears told him that he had given a gun to a third defendant, Hill, and that the gun was eventually returned to Spears. The officer stated that Spears said he received some money from one of the defendants after the robbery was committed. Curiously, a statement made by one of the defendants which was read into evidence [omitting the names of any other defendants] contained only one reference to anyone receiving any money, and that comment described that he loaned one dollar to the other defendant.

It would appear that this is the money which Spears received. The Commonwealth then called a Clerk of the Court of Quarter Sessions Court who, over relator's objection, testified that Spears had previously pleaded guilty to this indictment. (This was the plea entered during the trial of Bill No. 1549). The Commonwealth then rested. Spears, through his attorney, then demurred to the three bills of indictment for which he was then being tried. Bill No. 1535 charged possession of a firearm after conviction of a crime of violence; Bill No. 1574 charged carrying a concealed deadly weapon. Demurrers to both were sustained. However, the demurrer to Bill No. 1555, charging aggravated robbery, was overruled. The court found all defendants guilty.

The question which relator raises concerns the use of the prior withdrawn guilty plea as evidence. Spears contends that the plea was entered for him but without his consent. Unfortunately, the record affords no assistance in clarifying this question. It merely states that Spears was arraigned and that he pleaded guilty. In any event Spears repudiated the pleas with as much dispatch as possible, and after a hearing in chambers the court permitted the guilty pleas to be withdrawn. Commonwealth v. Scoleri, 415 Pa. 218, 202 A.2d 521, 203 A.2d 319 (1964) lists the reasons for which a judge may permit a defendant to withdraw a guilty plea. The *Scoleri* court stated that withdrawal is properly allowed where the guilty plea was entered out of ignorance, where it was involuntary or entered by mistake or without the defendant's consent, where entered by an uncounseled defendant in a capital case, where it was induced by fraud or threats or justifiable fear, where a promise inducing the plea was not kept, and finally, where because the court believes that justice will best be served by allowing the withdrawal. Id. at 247, 202 A.2d 521, 203 A.2d 319. The trial judge permitting relator to withdraw his plea probably did so because he felt that it was warranted in light of the law on the sub-

ject, and therefore a proper exercise of discretion. The circumstances surrounding the plea are confusing, and the record does not make this clear since there is no transcript of the arraignment. When the court later permitted the withdrawal of the pleas, it recognized some inadequacies. To later use this plea against him after a recognition of the inherent weaknesses it contained completely negates the permission to withdraw which was given in an exercise of the court's discretion. This lays a trap for the defendant. Our question is whether the Constitution permits this to occur.

The use of a withdrawn guilty plea was severely criticized by the landmark decision of Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). The court stated, at pp. 223–224, 47 S.Ct. at p. 583:

" * * * A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. United States v. Bayaud, [2 Cir.] 23 F. 721. But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. Commonwealth v. Crapo, 212 Mass. 209, 98 N.E. 702. The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. * * * "

The court reversed a conviction obtained in a federal court because of the use of a withdrawn plea. However, that decision did not rest on constitutional grounds.

Of course, a constitutional basis was not necessary since the court controls evidentiary matters in the lower federal courts and ruled that the plea, once withdrawn, is not competent evidence.

 The plea is a procedural mechanism which informs the court how to proceed with a particular defendant. The plea is not made under oath, nor is it subject to cross-examination. Once the plea of guilty is made, it dispenses with a trial and evidence, since it is a conviction in itself. It is not evidence per se. Wood v. United States, 75 U.S.App. D.C. 274, 128 F.2d 265 (1942). When a defendant is called upon to plead, he is asked by the court whether he pleads guilty or not guilty. The atmosphere of the court, the tenor in which the question is asked, and the source of the question all impose a sense of coercion upon the defendant to answer. Cf. *Wood,* supra. Silence is taken to mean a plea of "not guilty", so that the question will be answered in one way or another. Whether or not this plea is made voluntarily is questionable because of the surrounding circumstances. Whether relator's plea was voluntary cannot be answered, but the promptness of his repudiation and the ultimate allowance of withdrawal suggests that it was not a product of his will. The absence of any record of arraignment in this case renders the finding of the voluntary entering of the plea practically impossible.

 Discussion of the use of a plea as evidence raises a variety of questions. Can a plea of "not guilty" be used as evidence by the accused on his own behalf? The alternative use of a guilty plea appears to be on the same footing. A defendant certainly could not be called to the witness stand by the court during the trial of the case against him and asked whether he is guilty or not guilty. This would violate his constitutional guarantee against self-incrimination. The use of a previously made plea, however, may do just that. It places a burden on the defendant to take the witness stand for the purpose of explaining why he made

the plea in the first instance, with the alternative of suffering the consequences of any adverse inferences that may be drawn.

The question resolves itself into one of waiver. Although the plea of guilty may be considered as a waiver, does not a later withdrawal of that plea withdraw the waiver? One would seem to require the other. However, if a plea was involuntary from its onset, there is no effective waiver, and it is for this reason that we find a Fifth Amendment violation. Relator pleaded guilty to a variety of indictments, one of which is the present indictment. He was not on trial for this case at the time of his plea. He asserted at the evidentiary hearing held by this court that he never authorized his attorney to make such a plea, and denies having made it himself. Of course it is possible that he did not realize that he was pleading to this specific indictment. The record is barren of what took place at his arraignment. It merely states "(Defendant George Lee Spears was rearraigned and pleaded guilty to Bills 1549, 1555, 1567 and 1589)". There is no record of questions asked Spears as to why he wished to plead guilty, if he understood the crime, or whether he made the plea on promises of leniency. However, shortly after the day on which this plea was made, relator appeared in chambers and told the court that he wanted to withdraw the pleas. The court permitted him to do so. The precise reasons do not appear. However, from the totality of circumstances we can conclude that the court considered the pleas to be involuntary either because he was badgered into so pleading, or because he was not aware of the specific charges to which he was pleading. The withdrawal of the plea was permitted, and this in itself vitiates any possible waiver of defendant's privilege against self-incrimination. The privilege could not be involuntarily or ignorantly waived, and in view of the permission given to withdraw the plea we find that the plea of guilty did not operate as a waiver. Therefore, it could not be offered into evidence against relator without infringing his privilege not to incriminate himself. That the Fifth Amendment privilege against self-incrimination is now applied to state court proceedings by virtue of the Fourteenth Amendment is now undisputed. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). This right extends to convictions which were final before Malloy was decided (Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)), and would apply to relator who was sentenced approximately one month before *Malloy* was decided and appealed after *Malloy**. The use in evidence, therefore, of a prior withdrawn guilty plea violated relator's constitutional rights guaranteed by the Fifth and Fourteenth Amendments, requiring that this Court grant the writ of habeas corpus.

Our conclusion is bolstered by the amount and quality of evidence introduced at trial. The Commonwealth's evidence showed that relator owned a gun which he gave to another who later became implicated in this robbery. (The robbery was committed at gun point. However, we do not know whether the gun owned by relator was used since it was not in evidence.) It was also shown that the defendant said he received some money from one of the defendants after the robbery was committed (apparently a one dollar loan). Then the previous guilty plea was introduced.

The probative value of a plea is little, since pleas of guilty are made for a variety of reasons only one of which is guilt. Pleas are bargained for and can be given to assure a moderate sentence for a multitude of crimes. The defendant may not be guilty, in fact, of all crimes for which he was indicted, but the guilty plea as such gives him leverage with which he can minimize a sentence on a crime which he did commit. Pleas are sometimes given for expedi-

* Cf. Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 408, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

ence, and this is unfortunate. This occurs especially in cases of crimes which are not considered serious, for example, summary offenses. A plea could be given in ignorance or in fear or on promises of leniency. However, once it is withdrawn it has ceased to exist, since a judge in the wise exercise of his discretion has seen fit to consider it a nullity. The internal inconsistency within a court which on the one hand permits a guilty plea to be withdrawn, and on the other permits it to be used as evidence, entraps an unwary defendant and cannot be tolerated.

 A conviction which has no evidentiary basis has long been recognized as subject to collateral attack in the federal courts. To convict a man without evidence violates the fundamental fairness required by the Fourteenth Amendment, Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1959); Tot v. United States, 319 U.S. 463, 473, 63 S.Ct. 1241, 87 L.Ed. 1519 (concurring opinion 1943). The circumstances of this case show clearly that relator was not the actual perpetrator of the robbery. The witness testified that only one man, not relator, robbed her. Relator's guilt of this crime therefore can only be as a principal in the second degree, that is, one who aids and abets the actual robber but who was not present when the crime was committed. Commonwealth v. Claek, 29 D. & C.2d 379 (1962), affirmed per curiam, 200 Pa.Super. 361, 189 A.2d 321 (1962). There is no evidence which connects relator to this crime or which shows that he was aware that it was to be committed. No guilty mind has been shown by direct or circumstantial evidence. For the foregoing reasons, relator's conviction was not attended by the fundamental fairness required by the Constitution. It cannot stand and the writ must issue.

### BOTH BILLS OF INDICTMENT
### (1549 AND 1555)

 Relator has also challenged the quality of assistance of counsel he received in both trials. He does not allege incompetency of either attorney but claims that they were appointed too close to the time of trial to become properly familiar with his case. The time of appointment of counsel, in itself, does not establish ineffective assistance. United States ex rel. Kelley v. Rundle, 242 F.Supp. 708 (E.D.Pa.1965). At the trial on Bill 1549, relator's attorney requested a continuance, which was denied. Relator contends that he was thereby prejudiced since his attorney was not aware of certain alibi witnesses which he wanted to call on his behalf. However, the time element was not prejudicial since after the close of the trial, the plea of guilty, and the withdrawal of the plea, relator was given time to produce these witnesses. Any prejudice resulting from the short time between counsel's appointment and the trial was mitigated when additional time to get witnesses was allowed. In Bill 1555, counsel was appointed immediately before trial, i. e., within minutes. But the nature of the trial was such that more time would not appear to be essential. It has not been demonstrated that relator's attorney could have done anything more were he allowed more time for preparation. He in fact successfully demurred to two bills of indictment for which relator was tried. Relator never has suggested that he wanted to produce witnesses at this trial. In short, we see no prejudice. Other contentions raised by relator do not lead us to believe that relator's representation was less than that required by the Constitution. The test of constitutional deprivation arising from inadequate assistance of counsel is "representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and correct it." In re Ernst's Petition, 294 F.2d 556, 558 (3rd Cir. 1961); United States ex rel. O'Halloran v. Myers, 244 F.Supp. 169 (E.D.Pa.1965). No such deprivation occurred.

Other contentions raised by relator are not considered since we find that state remedies have not been exhausted, except as to the issues which we have discussed.