Scileppi, J.
On February 20,1963 defendant was indicted for the crime of manslaughter in the second degree. Following a nonjury trial before Mr. Justice Marks, he was found guilty and, on January 31, 1964, was sentenced from 2% to 5 years in State prison. No appeal was taken from the judgment of conviction. On March 12, 1965, however, defendant filed an application for a writ of error coram nobis, alleging that a contested coerced confession had been introduced at his trial *170 and that pursuant to the authority of Jackson v. Denno (378 U. S. 368) and People v. Huntley (15 N Y 2d 72) he was entitled to a postconviction ‘ ‘ Huntley ’ ’ hearing. The application was denied without a hearing on the ground that Jackson and Huntley are not applicable to nonjury trials. The Appellate Division, First Department, affirmed without opinion.
In Jackson the Supreme Court held unconstitutional the old New York procedure for determining voluntariness of confessions in criminal cases tried before a Judge and jury. Under that procedure, if the defendant objected to the introduction of the confession in evidence, a voir dire was held, generally in the presence of the jury, to test its voluntariness. If no issue of fact was raised by conflicting testimony on the voir dire, the question of the admission of the confession was for the court; but, if there was a conflict in the evidence, the question of voluntariness ultimately was for the jury (People v. Cefaro, 23 N Y 2d 283, and cases cited therein).
The Supreme Court held that this procedure violated the due process clause of the Fourteenth Amendment because it did not afford a defendant an opportunity ‘1 to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession” (Jackson v. Denno, supra, p. 377). Thus, the court noted that, “ Under the New York procedure, the evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness” (Jackson v. Denno, supra, p. 386). The heart of the opinion, however, is found in the following language:
“ But we do not rest on this ground alone, for the other alternative hypothesized in Stein [Stein v. New York, 346 U. S. 156]—that the jury found the confession involuntary and disregarded it—is equally unacceptable. Under the New York procedure, the fact of a defendant’s confession is solidly implanted in the jury’s mind, for it has not only heard the confession, but it has been instructed to consider and judge its voluntariness and is in position to assess whether it is true or false. If it finds the confession involuntary, does the jury— indeed, can it—then disregard the confession in accordance with its instructions ? If there are lingering doubts about the *171 sufficiency of the other evidence, does the jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession?
“ It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if this is the course it took, was affected by the other evidence showing the confession was true.” (Jackson v. Denno, supra, pp. 368-389.)
Instinct in the opinion is a fundamental distrust of juries as triers of the fact on the issue of voluntariness. In other words, the court assumes that juries are incapable of understanding and following the Judge’s instructions. Even if the jury found the confession involuntary, the court observed, it may nevertheless have been unable to disregard it in deciding the defendant’s guilt or innocence.
The defendant argues that the only difference between the instant case and Jackson is that here he was tried without a jury. This difference he contends is not critical and urges that under the rationale of Jackson a defendant in a nonjury case is entitled to a fair and reliable hearing on the issue of voluntrainess, uninfluenced by the other evidence of guilt in the case. In short, defendant contends that a Judge is also incapable of reaching an objective determination on voluntariness where he has heard evidence bearing on guilt or innocence. Therefore, as defendant asserted on oral argument, although the same Judge who tries the case can determine the issue of voluntariness, that determination should be made in a separate hearing before the commencement of the trial proper. This contention is not unsupported by authority. In the only two cases which seem to have squarely dealt with the problem of whether Jackson applies to nonjury cases, the Federal District Courts held that it did (see United States ex rel. Spears v. Rundle, 268 F. Supp. 691, and United States ex rel. Owens v. Cavell, 254 F. Supp. 154).
In holding that Jackson requires a separate hearing on the issue of voluntariness where the fact-finder is a Judge rather than a jury, the court in the Spears case said: “ The function *172 of a judge trying a case without a jury is twofold: he is a finder of fact, as well as an arbiter of the law. The responsibility is burdensome. But the task becomes too great when we require a judge who has heard evidence of guilt, to objectively and coldly assess a distinct issue as to the voluntariness of the confession. Objectivity cannot be guaranteed and reliability must be questioned. Jackson properly construed, prohibits the finder of fact from passing on the voluntariness of a confession since its decision as to voluntariness could be colored by evidence as to guilt.” (268 F. Supp., p. 695.)
In our opinion, this represents far too broad a reading of Jackson.
As noted earlier, the entire thrust of the Jackson opinion is concerned with the inability of juries to separate factors relating to the voluntariness of a confession from those bearing on guilt or innocence. It seems to us, however, that a Judge—unlike a jury—by reasons of his learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination as to voluntariness, regardless of whether he has heard evidence on other issues in the case. Indeed this court has already adopted this view in People v. Huntley (supra), for there we held that as to trials already concluded the hearing on voluntariness should be held, where possible, “before the Judge who previously presided at the voir dire, if any, or the trial proper ” (People v. Huntley, supra, p. 77). We also held that there is no constitutional impediment to using the prior record provided the defendant and the People are permitted to put in additional proof if either side so desires.
While a jury may sometimes be confused by the legal intricacies of deciding two questions together, a Judge will not be so disoriented. At we said in People v. Buchalter (289 N. Y. 181, 224-225): ‘ ‘ Errors which loom large to a judge, learned in the law and trained to administer justice in strict accordance with the law, may be scarcely visible to the lay juror.” For example, a Trial Judge may decide the admissibility of evidence such as contraband, the possession of which is a crime, during a trial at which the crime of possession is charged (Code Crim. Pro., § 813-d). Only recently in People v. Sykes (22 N Y 2d 159) we pointed to section 813-d (subd. 3) of the Code *173 of Criminal Procedure as authority for the proposition that “ a completely separate hearing on voluntariness may perhaps not he required in nonjury cases ” (People v. Sykes, supra, p. 163; emphasis added).
In our own deliberations in this court, we are called upon to objectively consider questions of law and reverse convictions even though upon reading the entire record we are convinced of the defendant’s iguilt. As we said in People v. Adams (21 N Y 2d 397, 402):
‘ ‘ Although the evidence in the record is sufficient to support the conviction, this court, as well as others, has refused ‘ to announce a doctrine that the fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant’s guilt’ (People v. Mleczko, 298 N. Y. 153, 163; see, also, People v. Steinhardt, 9 N Y 2d 267; People v. Jackson, 7 N Y 2d 142; People v. Marks, 6 N Y 2d 67; People v. Ochs, 3 N Y 2d 54; People v. Lovello, 1 N Y 2d 436; People v. Savvides, 1 N Y 2d 554; People v. Castelo, 24 A D 2d 827; People v. Driscoll, 20 A D 2d 880; People v. Copeland, 12 A D 2d 942; People v. Lombard [4 A D 2d 656], supra).”
Other examples come readily to mind. In many nonjury civil cases the Trial Judge may be called upon to rule whether a written instrument is admissible in evidence. Before making a determination, he may inspect the instrument, which might be dispositive of the issue of liability. After doing so, he may rule it inadmissible for some reason such as failure to lay a proper foundation. Although he has examined the instrument, he must nevertheless ultimately rule on the issue of liability without taking into consideration the evidence which he excluded.
In sum, we are of the opinion that there is a critical difference between a jury and nonjury trial and, therefore, hold that the rationale of Jackson is inapplicable in the latter situation.
We have considered the defendant’s other contentions and find them to be without merit.
Accordingly, the order appealed from should be affirmed.
Chief Judge Fule and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
Order affirmed.