UNITED STATES of America ex rel.
James V. PLACEK,
Petitioner-Appellant,

v.

STATE OF ILLINOIS,
Respondent-Appellee.

No. 76–1376.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1976.

Decided Dec. 21, 1976.

Frederick F. Cohn, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Timothy B. Newitt, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, and TONE and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Petitioner-appellant Placek, who was convicted of theft in a bench trial before an Illinois court, brings this appeal from the district court's dismissal of his petition for a writ of habeas corpus without an evidentiary hearing. He argues on appeal that his petition should be granted or, in the alternative, remanded for an evidentiary hearing.

Placek contends (1) that evidence obtained following an arrest made without a warrant or probable cause was illegally used in his trial, (2) that statements used against him at trial should have been suppressed because he was not given proper *Miranda* warnings, (3) that his confession and evidence seized pursuant to a search of his apartment were illegally used against him at trial because promises of leniency were made to him rendering his confession involuntary and vitiating the consent he gave for the search, (4) that he was denied his constitutional right to a hearing on the voluntariness of his confession, and (5) that he was denied his constitutional right to a speedy trial.

## I.

■ We believe, and Placek does not vigorously contest on appeal, that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars federal court collateral review of his claim that evidence obtained through a search incident to an allegedly invalid arrest was illegally used against him at trial.

Placek, like one of the *Stone* petitioners, predicated constitutional error on the use of evidence that was the fruit of a search incident to an allegedly invalid arrest. *Id.* at 469, 96 S.Ct. at 3039–40. The state trial and appellate courts each rejected Placek's constitutional claim after a full and fair hearing on the merits. Thus, we think it plain that Placek's claim is barred by the *Stone* holding that,

> "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052.

## II.

■ Placek next argues that the *Miranda* warnings given at the time he was taken into custody were constitutionally deficient because they failed to apprise him of his right to the *immediate* appointment of counsel. Placek was advised that he had the right to remain silent; that anything he said could be used against him; that "if he wanted an attorney present, he could have one"; and that "if he could not afford one, an attorney would be appointed through the Court for him." Placek's argument that these *Miranda* warnings were constitutionally deficient because they did not specifically advise him that he had the right to the immediate appointment of counsel has been previously addressed by this Court in *United States v. Adams,* 484 F.2d 357, 361–362 (7th Cir. 1973). In *Adams* we relied on *United States v. Lamia,* 429 F.2d 373 (2d Cir.), *cert. denied,* 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970), where similar warnings [1] were said to have "effectively warned that [Placek] need not make any statement until he had the advice of an attorney." *Id.* at 377. We find no substantial distinction between the warnings given Placek and the warnings found constitutionally adequate in *Adams* and *Lamia.*

The cases cited by Placek in support of his argument are easily distinguishable. *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir. 1972), *United States v. Garcia,* 431 F.2d 134 (9th Cir. 1970), and *Coyote v. United States,* 380 F.2d 305 (10th Cir.), *cert. denied,* 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967), each involved warnings that were internally inconsistent in that they advised the accused of the right to have an attorney present during questioning, but also indicated that an attorney could not be appointed until a later time.[2] Here, in contrast, the warnings given Pla-

1. The warnings given in *Lamia* were:

    "You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you if you wish." 429 F.2d at 375 n.1.

2. Williams was advised that he had "the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning, . . . whether you can afford to hire one or not. *We have no way*

cek did not purport to take away in one sentence rights announced in another.

### III.

Placek next contends that he was wrongfully convicted on the basis of an involuntary confession and evidence seized pursuant to an illegal search. He says that promises of leniency were made to him that vitiated the voluntariness of the statements used against him at trial, as well as the consent he gave police officers to search his apartment for other incriminating evidence. *Hunter v. Swenson*, 442 F.2d 625 (8th Cir. 1971), *cert. denied*, 404 U.S. 863, 92 S.Ct. 76, 30 L.Ed.2d 107 (1972). Though admitting that it was he who first raised the possibility of leniency in exchange for information, Placek asserts in his brief that, after his apprehension at the scene of the crime, both the arresting officer and the manager of the hotel victimized by his theft "made promises . . . that if he cooperated and gave a statement and helped in recovering other items, they would intercede for [him] and see that if prosecuted, [he] would be treated very leniently."

Placek raised this claim at his bench trial, and the trial court remarked in overruling Placek's objection to the admission of the contested statements that they were "clearly voluntary." Moreover, on cross-examination by Placek's counsel, the arresting officer explicitly denied that any such promises of leniency were ever made at the scene of the crime or at the stationhouse. Placek himself never went on the stand to testify to the contrary. The district court below also concluded that Placek's statements were voluntary, although we do not read the court's order as embodying a finding

that promises of leniency were never made to Placek. See *United States ex rel. Placek v. Illinois*, No. 75 C 3615, at 4 (N.D. Ill. Mar. 3, 1975) (judgment order). In short, apart from the assertions of his counsel, there is nothing in the record to support Placek's contention that promises of leniency were made to him.

Recognizing the absence of evidence in the record showing that his confession was involuntary, Placek argues that he is entitled to an evidentiary hearing on the issue because he was denied his constitutional right to one at trial. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963). Furthermore, because neither the state trial court nor the district court below ever made any explicit finding that promises of leniency were not made to him, Placek claims that he is also entitled to an evidentiary hearing on the issue under *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ As a practical matter, the two bases for an evidentiary hearing asserted by Placek collapse into one because *Jackson* requires the "reliable and clear-cut determination of the voluntariness of a confession, including the resolution of disputed facts upon which the voluntariness issue may depend," that would obviate the need for a *Townsend* hearing. 378 U.S. at 391, 84 S.Ct. at 1788. We turn, therefore, to Placek's *Jackson* claim.

### IV.

During Placek's bench trial, the arresting officer testified on direct examination as to an incriminating statement that Placek had made at the scene of the crime after he had

*of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.*" 467 F.2d at 1250 n.1 (emphasis added).

Garcia was told that she could have an attorney present during questioning, but also that she could "have an attorney appointed to represent you *when you first appear before the U.S. Commissioner or the Court.*" 431 F.2d at 134 (emphasis added).

Coyote was informed that "I can talk to a lawyer or anyone before saying anything, and

that the judge will get me a lawyer if I am broke." 380 F.2d at 307. Though admitting the above, Coyote testified that he was also told that he could have a court appointed lawyer "only when he came to trial in Albuquerque." *Id.* at 308. Upholding the trial court's finding to the contrary, the Tenth Circuit ruled that Coyote had been adequately advised of his right to the assistance of counsel. *Id.* at 308–09.

been given proper *Miranda* warnings. Placek's counsel immediately objected to the admissibility of that testimony, claiming that Placek's statement was involuntary because it had been induced by promises of leniency made by the arresting officer and the manager of the hotel victimized by the theft. The trial court, noting that it had heard no evidence that the statement was involuntary, overruled the objection. Placek's counsel then moved for a hearing on the voluntariness of the statement. The court responded:

> "I think [the statement] was clearly voluntary. I don't think that it was coerced in any way or encouraged in any way by a police officer. I don't think there is any bearing for the motion at all or any grounds for the motion at this time.
>
> The objection will be overruled, the motion denied."

The officer's testimony proceeded, and Placek's counsel asked that the record reflect his continuing objection to any testimony relating to statements made to the officer by Placek.

On cross-examination, Placek's counsel inquired as to whether the arresting officer or any representative of the hotel had told Placek that they would go easy on him if he told them where to locate items that had been stolen in previous thefts. The officer explicitly denied that any promises were made. Counsel also inquired as to whether promises of leniency conditioned on Placek's giving consent to search his apartment were made later at the stationhouse. Again the officer denied that any such promises were made.

Following that cross-examination, Placek's counsel renewed his motions to strike the officer's testimony and to hold a suppression hearing on the voluntariness of Placek's statements. He engaged the court and opposing counsel in argument concerning case law supportive of his motions. Though admitting that the cases he cited involved jury trials, Placek's counsel argued they were apposite in a bench trial setting as well:

> "Now here we have just a bench trial, and believe me, you know, without sounding sycophantic, I know that your Honor has tried many cases before this time and knows what the law is and can separate the competent evidence from the incompetent evidence.
>
> The only thing is this, Judge, that I think that the Court can not accept statements or confessions unless they are shown to be voluntary and once there is any indication that these statements are involuntary, then I think it is incumbent on the Court to decide whether or not in fact they are, because it is a question of law, because even in a jury case, the Court decides whether or not they are voluntary or involuntary."

The court then requested argument from opposing counsel. The prosecutor contended that the motion for a hearing was not timely under Illinois law because Placek knew prior to trial that the statements would be used against him, but made no motion for a hearing. Placek's counsel argued that the motion for a hearing could be raised at any time prior to judgment. The court noted that no new evidence had come to light subsequent to the time when Placek should have requested a hearing. Placek's counsel then stated that he "would offer some proof in limine to show that there are grounds for a hearing on [the] voluntariness of these statements." The court then asked whether "we [could] reserve this and take another witness?" Placek's counsel replied: "Fine, I have no objection. This matter can be resolved at any time, I think." Thereupon, a new witness was called, and the record before us is silent as to whether any further discussions were held between the counsel and the court concerning Placek's motions to strike the testimony and to hold a suppression hearing. Placek did not take the stand at trial.

Placek contends that the trial court violated his due process rights by denying his motion for an evidentiary hearing on the voluntariness issue raised at trial. He relies on *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), where the

Court announced that a criminal defendant has a

"constitutional right at some stage in the proceedings to object to the use of [an allegedly involuntary] confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Id.* at 377–78, 84 S.Ct. at 1780–1781.

In *Jackson* the Court found constitutionally inadequate a procedure whereby disputed issues of facts going to a confession's voluntariness were presented solely to a jury. The jurors were instructed to consider the confession in deciding the defendant's guilt or innocence only if they found the confession voluntary after determining the disputed facts bearing on that issue. Because no special verdicts were used, the jury's finding on the confession's voluntariness, as well as its findings on the underlying facts bearing thereon, would merge into the general verdict acquitting or convicting the defendant.

The Court reasoned that a jury "may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession," and that "matters pertaining to the defendant's guilt will infect the jury's finding of fact bearing upon voluntariness, as well as its conclusion upon that issue itself." *Id.* at 382–83, 84 S.Ct. at 1783–84. Thus, because "the evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness," the Court stated that "it cannot be assumed . . . that the jury reliably found the facts against the accused." *Id.* at 386–87, 84 S.Ct. at 1786. The Court held that the New York procedure at issue fell short of satisfying the due process requirement that the procedures used "be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." *Id.* at 391, 84 S.Ct. at 1788.

Although the Court found fault with the specific procedure at issue in *Jackson,* it also made clear that it was not questioning the constitutional propriety of procedures whereby "the judge hears the confession evidence, himself resolves evidentiary conflicts, and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary." *Id.* at 378 n.8, 84 S.Ct. at 1781 n.8. The court noted further:

"Whether the trial judge, another judge, or another jury, but not the convicting jury, fully resolves the issue of voluntariness is not a matter of concern here. To this extent we agree . . . that the States are free to allocate functions between judge and jury as they see fit." *Id.* at 391 n.19, 84 S.Ct. at 1789 n.19.

Nothing in *Jackson,* however, speaks to the question presented here—whether, in a bench trial, as opposed to a jury trial, the requisite judicial determination of the voluntariness issue can be made in the course of the trial rather than at a separate hearing held before trial or during a trial recess. Two lower courts, though, have taken positions supportive of Placek's contention that he was entitled to a separate evidentiary hearing at the time he challenged the admissibility of his allegedly involuntary statements. In *United States ex rel. Spears v. Rundle,* 268 F.Supp. 691 (E.D. Pa. 1967), *aff'd on other grounds,* 405 F.2d 1037 (3d Cir. 1969), and *United States ex rel. Owens v. Cavell,* 254 F.Supp. 154 (M.D. Pa. 1966), the district courts ordered new evidentiary hearings because a separate determination of the voluntariness of the defendants' confessions had not been made at their bench trials. Both courts reasoned that due process required a separate hearing to determine the voluntariness issue even for a bench trial because once the judges had heard evidence of guilt it was "impossible" for them to determine the voluntariness issue objectively and reliably, as *Jackson* requires. 268 F.Supp. at 695–96; 254 F.Supp. at 155.

In reaching this conclusion, both courts relied heavily on *Hutcherson v. United*

*States,* 122 U.S.App.D.C. 51, 351 F.2d 748 (1965), where the court of appeals held that the due process standards of *Jackson* had been violated during a pretrial suppression hearing because "the trial court, in admitting the confession against the claim of its involuntariness, was influenced by inquiry into its truth." *Id.* at 54, 351 F.2d at 752. The record revealed that the trial judge had himself questioned the defendant in detail as to the truth of his confession. The *Hutcherson* court was thus convinced not only that the trial court's factual finding was influenced by the confession's truth, but also that the trial court had applied an incorrect legal standard—one "which took into account the circumstances of probable truth or falsity"—in determining the confession's voluntariness. *Id.* at 55, 351 F.2d at 753, quoting *Rogers v. Richmond,* 365 U.S. 534, 543–44, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961).

Given the state of the record on which *Hutcherson* is premised, we doubt that it supports the *Spears* and *Owens* courts' holdings that a trial judge must be presumed unable to determine the voluntariness issue objectively and reliably whenever he has previously heard evidence of a defendant's guilt. Even assuming that *Hutcherson's* reasoning compels that conclusion, we are not inclined to indulge in such a presumption in this Circuit. Rather, we prefer the views of those courts that have held that the separate-hearing requirement of *Jackson* has no applicability in a bench trial setting. *People v. Fultz,* 32 Ill.App.3d 317, 336 N.E.2d 288, 300–03 (1st Dist. 1975);

*State v. Hutchinson,* 260 Md. 227, 271 A.2d 641, 646 (1970); *People v. Brown,* 24 N.Y.2d 168, 299 N.Y.S.2d 190, 247 N.E.2d 153, 155 (1969); *Akers v. Commonwealth,* 216 Va. 40, 216 S.E.2d 28, 31 (1975); cf. *State v. Jarvi,* 3 Or.App. 391, 474 P.2d 363, 364 (1970).

Even a cursory perusal of the Court's opinion in *Jackson* reveals that its holding was premised largely on its concern that lay jurors were unable to separate considerations going solely to the voluntariness of a confession from matters affecting its reliability as proof of the defendant's guilt or innocence. However, a trial judge, unlike a juror, is trained by learning and experience to segregate evidence bearing on a confession's voluntariness from evidence bearing on its reliability and the defendant's culpability. Indeed, Placek's counsel admitted to the judge at trial, "your Honor  .   .   . knows what the law is and can separate the competent evidence from the incompetent evidence." Our entire system of justice is predicated on the ability of trial and appellate judges to do precisely that.

■■■ To hold, as did the *Spears* and *Owens* courts, that the reliability of a trial judge's voluntariness determination is inevitably compromised whenever the court has heard evidence of guilt before ruling on the issue is to indulge in a presumption contrary to the law that, absent a clear showing of substantial prejudice, a bench trial judge is presumed to have considered only relevant and admissible evidence in reaching his findings.[3] As this Court has previ-

---

**3.** *United States v. Allstate Mortgage Co.,* 507 F.2d 492, 494 (7th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *United States v. Penick,* 496 F.2d 1105, 1108 (7th Cir.), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141 (1974); *United States v. Greathouse,* 484 F.2d 805, 807 (7th Cir. 1973); *United States v. Fox,* 437 F.2d 733, 734 (7th Cir.), *cert. denied,* 402 U.S. 1011, 91 S.Ct. 2198, 29 L.Ed.2d 434 (1971); *United States v. Stanley,* 411 F.2d 514, 516–17 (7th Cir.), *cert. denied,* 396 U.S. 959, 90 S.Ct. 432, 24 L.Ed.2d 423 (1969); *United States v. Wolff,* 409 F.2d 413, 416 (7th Cir.), *cert. denied,* 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 108 (1969); *United States v. Menk,* 406 F.2d 124, 127 (7th Cir.), *cert.*

*denied,* 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969); *United States v. Miles,* 401 F.2d 65, 67–68 (7th Cir. 1968).

This rule is deeply embedded in the law of other Circuits as well. E.g., *United States v. Weldon,* 384 F.2d 772, 774 (2d Cir. 1967); *United States v. Smith,* 390 F.2d 420, 422 n.2 (4th Cir. 1968); *United States v. Dillon,* 436 F.2d 1093, 1095 (5th Cir. 1971); *United States v. McCarthy,* 470 F.2d 222, 224 (6th Cir. 1972); *Fotie v. United States,* 137 F.2d 831, 839 (8th Cir. 1943); *Singleton v. United States,* 381 F.2d 1, 4 (9th Cir.), *cert. denied,* 389 U.S. 1024, 88 S.Ct. 601, 19 L.Ed.2d 673 (1967); *Havelock v. United States,* 427 F.2d 987, 991 (10th Cir.),

ously noted, "[m]uch that comes to the attention of a judge in a bench trial would be inadmissible in a jury trial." *United States v. Greathouse,* 484 F.2d 805, 807 (7th Cir. 1973). In a bench trial, we presume that evidence admitted for a limited purpose is considered in its proper perspective by the trial judge. *United States v. Oliver,* 363 F.2d 15, 19 (7th Cir.), *cert. denied,* 385 U.S. 904, 87 S.Ct. 216, 17 L.Ed.2d 135 (1966). Moreover, when evidence has been initially received and later excluded as inadmissible in a bench trial, we assume that the trial judge was not improperly influenced thereby. *United States v. Miles,* 401 F.2d 65, 68 (7th Cir. 1968). Indeed, even when we have held that evidence was improperly admitted in a bench trial, we have refused to presume that the trial judge considered it in reaching his verdict. E.g., *United States v. Stanley,* 411 F.2d 514, 516 (7th Cir.), *cert. denied,* 396 U.S. 959, 90 S.Ct. 432, 24 L.Ed.2d 423 (1969); *United States v. Menk,* 406 F.2d 124, 127 (7th Cir.), *cert. denied,* 395 U.S. 946, 89 S.Ct. 2019, 23 L.Ed.2d 464 (1969). Accordingly, in considering the case before us, we must adhere to our prior holding that

> "a trained, experienced Federal District Court judge, as distinguished from a jury, must be presumed to have exercised the proper discretion in distinguishing between the improper and the proper evidence introduced at trial, and to have based his decision only on the latter, in the absence of a clear showing to the contrary by appellant." *United States v. Menk, supra* at 127.

Surely considerations of comity entitle learned and experienced state court judges to no less deference. Placek has made no showing that his rights were prejudiced by the trial judge's contemporaneous consideration of evidence of guilt along with evidence bearing on the voluntariness of his confession, and we will not presume that the reliability of the trial judge's voluntariness finding was undermined by the procedure employed in this case.

■ Placek received a hearing *at trial* in which he was permitted to object to the admissibility of the allegedly involuntary confession and to cross-examine witnesses concerning his claim that promises of leniency were made to him. Moreover, under Illinois law, he could have testified at trial on the voluntariness issue without subjecting himself to cross-examination broader than the scope of his direct testimony.[4] Had he been able to testify at a separate suppression hearing rather than at trial, he would still have been subject to impeachment.[5] Thus, no essential purpose would have been served by stopping the trial proceedings to hold a separate evidentiary hearing in which the same testimony would have been presented before the very same trier of fact.[6] Placek therefore received the opportunity to object to the admissibility of the confession and the full and fair judicial hearing on the question of voluntariness to which *Jackson* entitled him. He has made no showing that the trial judge's determination was improperly influenced by consideration of his confession's truth.[7]

cert. denied, 400 U.S. 946, 91 S.Ct. 252, 27 L.Ed.2d 251 (1970).

4. *People v. Kirkwood,* 17 Ill.2d 23, 160 N.E.2d 766, 771 (1959), *cert. denied,* 363 U.S. 847, 80 S.Ct. 1623, 4 L.Ed.2d 1730 (1960); *People v. Smith,* 413 Ill. 218, 108 N.E.2d 596, 598 (1952); *People v. Davis,* 19 Ill.App.3d 709, 312 N.E.2d 360, 364 (1st Dist. 1974).

5. *People v. Ladas,* 12 Ill.2d 290, 146 N.E.2d 57, 59 (1958); *People v. De Hoyos,* 31 Ill.App.3d 12, 332 N.E.2d 643, 648 (1st Dist. 1975).

6. Any supposed advantage derived from a defendant's being able to testify at a suppression hearing rather than at trial would seem to be fleeting unless due process required not only a

separate hearing but also a hearing judge other than the ultimate trier of fact. *Jackson,* however, disavowed any intent to mandate such a procedure in the bench trial setting now before us. 378 U.S. at 391 n.19, 84 S.Ct. 1774 n.19; *State v. Jarvi,* 3 Or.App. 391, 474 P.2d 363, 364 (1970); Developments in the Law, *Confessions,* 79 Harv.L.Rev. 935, 1068–69 (1966).

7. If specific evidence that the trial court's voluntariness determination had been influenced by the truth of Placek's confession clearly appeared on the record before us, *Jackson* would require a different result. E.g., *Hutcherson v. United States,* 122 U.S.App.D.C. 51, 351 F.2d 748, 752–53 (1965); cf. *Fotie v. United States,* 137 F.2d 831, 839 (8th Cir. 1943). We refuse

We do not believe that due process requires a trial judge sitting as the trier of fact to recess the trial and hold a separate evidentiary hearing to ensure the reliability of his voluntariness determination.[8]

■ Notwithstanding the above, Placek argues that he is entitled to a new evidentiary hearing on the voluntariness issue because neither the state trial court nor the district court below made any explicit finding on his underlying claim that he was given promises of leniency. *Jackson,* of course, requires that the judge make a "reliable and clear-cut determination" of both the voluntariness issue and dependent issues of fact bearing thereon. 378 U.S. at 391, 84 S.Ct. at 1774. However, the trial judge "need not make formal findings of fact or write an opinion" as long as "his conclusion that the confession is voluntary . . . appear[s] from the record with unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967).

In the case at hand, no formal findings of fact were entered by the state court regarding Placek's promise-of-leniency claim. Thus, we must determine whether the merits of that factual dispute were ever resolved at his state court trial.

*Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), which itself involved an involuntary-confession claim, assists us in this endeavor. It instructs a federal court to recognize that state court findings may be implicit in a ruling on the merits of a constitutional claim presented at trial even though no explicit findings have been entered on the disputed facts underlying the claim. The findings of the state trier of fact may be reconstructed when "his view of the facts is plain from his opinion or because of other indicia" in the record. *Id.* at 314, 83 S.Ct. at 758. Furthermore, in the "ordinary case" where there has been no articulation of the constitutional standards the state court applied in disposing of the constitutional claim, *Townsend* says that federal courts may "properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied." *Id.* at 314–15, 83 S.Ct. at 758. A paradigm of the circumstances in which reconstruction of implicit state court findings is possible was given in *Townsend:* "if the prior state hearing occurred in the course of the original trial . . . on a motion to suppress allegedly unlawful evidence . . . it will usually be proper to assume that the claim was rejected on the merits." *Id.* at 314, 83 S.Ct. at 758.

■ In the instant case, the state trial court, in denying Placek's motion to suppress his incriminating statements because they were allegedly induced by promises of leniency, exclaimed that the statements were "clearly voluntary" and not "coerced in any way or encouraged in any way by a police officer." The court's voluntariness finding thus appears in the record with "unmistakable clarity," and implicit in the court's ruling is a finding that no promises of leniency were ever made. To be sure, the court's comment was made before any evidence on the voluntariness issue had been presented by Placek; however, the court's ruling was premised on its statement that there were no evidentiary

---

today, however, to presume that the trial judge's voluntariness determination was unreliable merely because he had heard evidence of guilt in concert with evidence on the voluntariness issue at trial.

**8.** By holding that due process was not offended by the state procedure employed in this case, we do not wish to commend to other courts the practice of holding a voluntariness hearing in conjunction with a bench trial. We have previously looked with disfavor on procedures that permit incriminating evidence to work a "po-

tential influence" on a trial judge's consideration of the voluntariness issue. *United States ex rel. Hickman v. Sielaff,* 521 F.2d 378, 386 (7th Cir. 1975). Holding a pretrial hearing, or a separate hearing when the voluntariness issue is first raised at trial, seems preferable in order to minimize the possibility that such improper influence might arise. However, the Constitution, of course, gives us no supervisory power to compel state courts to follow our "preferences" regarding trial procedures.

grounds for the motion "at *this* time." (Emphasis added). We believe this shows the court's willingness to reconsider its ruling had Placek come forth with further evidence on the issue.[9] No such evidence was forthcoming. Indeed, on cross-examination by Placek's counsel, the arresting officer declared that no promises were ever made to Placek. That counsel may have made the tactical decision not to meet the arresting officer's testimony with Placek's own, and not to reinforce the officer's denial by cross-examining the hotel manager who also was alleged to have made promises of leniency, does not mean that Placek was not given the opportunity to adequately develop the material facts. The record clearly supports the trial court's preliminary finding of voluntariness and does not reveal any reason to reconsider that finding. Accordingly, we conclude that the court's voluntariness determination appears from the record "with unmistakable clarity," as *Sims v. Georgia* requires. 385 U.S. at 544, 87 S.Ct. at 639.

Placek thus received all that *Jackson* requires, and the district court did not abuse its discretion in denying Placek an evidentiary hearing.

## V.

■■■ Placek's final argument is that he was deprived of his constitutional right to a speedy trial. The essence of his claim is that the State, after nolle prossing its initial indictment because of a technical deficiency, waited four months to reindict Placek, and then delayed six months to serve him with an arrest warrant on the second indictment. Assuming *arguendo* that the delays were not attributable to any action of Placek and that he made a demand for trial at the time his counsel objected to the State's requests for a nolle prosse and a continuance to obtain a new indictment, we cannot say, after balancing the other factors deemed relevant to a speedy trial claim in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that the delay rises to the level of a federal constitutional error.

The 10-month delay, even assuming most of it to be inexcusable, is less than delays we have found tolerable in other cases. For example, we said in *United States v. Joyce,* 499 F.2d 9, 20 (7th Cir. 1973), *cert. denied,* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974), that a "12-month delay, while not insignificant, is not extreme." In itself, a 10-month delay is not so long that we can assume "a certain amount of presumed prejudice" as we did in *United States v. DeTienne*, 468 F.2d 151, 156 (7th Cir. 1972), *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973), where a delay of over 19 months was ultimately held not to have deprived the accused of his constitutional right to a speedy trial.

Moreover, the only prejudice asserted by Placek is anxiety generated by the delay. Placek was not incarcerated prior to trial. In fact, Placek's brief reveals that he con-

---

**9.** This distinguishes the instant case from *United States ex rel. Hickman v. Sielaff,* 521 F.2d 378 (7th Cir. 1975), where we ordered a new evidentiary hearing because the state trial court admitted an allegedly involuntary confession into evidence without hearing the defendant's testimony on the voluntariness issue at a suppression hearing held in the presence of a jury. Our holding in *Hickman* was predicated on the prejudicial effect that the court's disposition of the voluntariness issue without hearing from the defendant was likely to have on the jury's assessment of his credibility and its reconsideration of the issue. *Id.* at 386–87.

In the bench trial setting before us now, the ex parte aspects of the voluntariness hearing condemned in *Hickman* are less troubling. A trial judge, unlike a jury, is trained by learning and experience to purge his mind of incompetent evidence before ruling on an involuntary confession claim. Thus, in a bench trial, unlike a jury trial, the trial judge can admit a confession into evidence subject to later exclusion after hearing the defendant's testimony without having to declare a mistrial. Indeed, the practice of contingently admitting evidence in a bench trial is a longstanding one encouraged by many courts and commentators to prevent new trials following reversals attributable to overly scrupulous application of exclusionary rules. E.g., *Builders Steel Co. v. IRS,* 179 F.2d 377, 379 (8th Cir. 1950); Devitt, *The Judge's Profession, Seminars for Newly Appointed United States District Judges* 8 (Comm. on Pretrial Procedure, Judicial Conference of the United States 1963).

tinued working at his job while awaiting trial. The delay caused no loss of witnesses, and it was not such a substantial period as to have caused a serious risk of severe memory lapses concerning the events at issue. Indeed, Placek admits in his brief that no "prejudice to his defense as such" occurred as a result of the delay. Given that admission, we are unpersuaded that he was denied his constitutional right to a speedy trial; moreover, we are convinced that any error would necessarily have to be deemed harmless beyond a reasonable doubt because Placek has not made out a "persuasive showing of prejudice" to his defense. *United States v. Clay,* 481 F.2d 133, 137 (7th Cir.), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 133 (1973).

### VI.

For the reasons noted above, we affirm the district court's dismissal of Placek's habeas petition without an evidentiary hearing.

AFFIRMED.

TONE, Circuit Judge (concurring).

I concur in the court's opinion but would make one addition to the statement at note 4 that Placek was not prejudiced by the hearing of the voluntariness issue during trial because "under Illinois law, he could have testified at trial on the voluntariness issue without subjecting himself to cross-examination broader than the scope of his direct testimony." Placek does not contend that the testimony he might have given on the voluntariness issue would have tended to incriminate him. Accordingly, the same trier of fact could properly determine both issues.