550 P.2d 1095

**STATE of Arizona, Appellee,**

v.

**Michael KNAUBERT, Appellant.**

**No. 1 CA–CR 1228.**

Court of Appeals of Arizona,
Division 1,
Department B.

June 1, 1976.

Rehearing Denied July 23, 1976.
Review Denied Sept. 14, 1976.

54

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Teresa S. Thayer, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edmund T. Allen, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

After a trial by jury, defendant, Michael Knaubert, was convicted of three counts of first degree rape, two counts of assault with intent to commit murder, one count of armed robbery and one count of lewd and lascivious acts. The defendant was sentenced to not less than 60 nor more than 99 years on all counts except for the lewd and lascivious act conviction for which he received four and a half years to five years. The sentences are to run concurrently.

The charges against the defendant arose out of two separate incidents. In the first, which occurred on March 22, 1974, the defendant picked up a male and a female hitchhiker, drove them to a desert area in

the Carefree area and raped and shot the female and robbed and strangled the male.

The second incident occurred on July 12, 1974, when the defendant picked up two female hitchhikers. Using a gun, he took the females to a desert area near Carefree where he raped both of them and forced one of them to perform fellatio upon him. The defendant's primary defense to these charges was insanity.

On appeal, he raises six issues:

1. Because appellant's consent to a search of his bedroom was not voluntary, the trial court should have suppressed the evidence seized during that search.

2. Appellant's confession was not voluntary because of promises made to him.

3. The trial court erred in instructing the jury that there is a presumption of sanity when the appellant produced expert testimony that he was not legally sane at the time the alleged crimes occurred.

4. Appellant was denied his right to a speedy trial.

5. His sentence was excessive.

6. The trial court erred in not granting a defense motion for a directed verdict as to one of the rape charges.

As to the first issue, appellant was taken into custody in connection with the second incident on July 13, 1974. After being informed of his *Miranda* rights, the defendant confessed to the crimes. The police officer asked the defendant where the gun he used was located and he stated that it was in the desert area where the crime occurred. The defendant went with the police officers to the scene in an attempt to locate the gun. After failing to locate the gun in the desert, the defendant told the police officers that they could find it in his bedroom and gave them permission to retrieve it. He further told the police

that the gun was in a footlocker in his bedroom at his parents' apartment.

The police then went to the defendant's parents' apartment where they were admitted without objection by his father. In their initial search of the bedroom, the police could not find the weapon, but the father volunteered the information that a particular trunk belonging to the defendant was in all probability where the gun could be located. The father obtained a key for the trunk and the police opened it. In the trunk, the police discovered various personal items consisting of a ring, necklace, a wallet, an address book and a watch which belonged to the victims of the first incident.[1] At trial, the defendant's motion to suppress this evidence was denied.

First, appellant contends his consent to this search was not voluntary and that therefore the resulting warrantless search was illegal. This contention is based on the argument that when a defendant is in custody, as compared to a non-custodial situation, the record must affirmatively show that the defendant either knew of or was advised of his right to refuse to consent to the search. Appellant argues that because the record does not affirmatively show such knowledge, the court, as a matter of law, must reverse his conviction.

▉ In our opinion, the Fifth Amendment to the United States Constitution does not require the test proposed by appellant. Rather, the test is whether the consent was voluntary in light of all of the surrounding circumstances. Knowledge of the right to refuse is only a part of this test and is not determinative in and of itself. The United States Supreme Court has stated "it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case and that is evidenced

---

[1]. Appellant did not at trial and does not on appeal contend that the scope of the search exceeded the scope to which he consented. We agree. See *State v. Childs*, 110 Ariz. 389, 519 P.2d 854 (1974).

in our prior decisions involving consent searches." *Schneckloth v. Bustamonte,* 412 U.S. 218, 233, 93 S.Ct. 2041, 2050, 36 L.Ed. 2d 854 (1973).

Appellant attempts to distinguish *Schneckloth* by arguing that it only applies to consents given by a defendant who is not in custody. However, this distinction has been rejected by the United States Supreme Court. The Court has stated:

" . . . [t]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search. Similarly under *Schneckloth,* the absence of proof that Watson [the defendant] knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance." *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598, 609 (1976).

The defendant's reliance on *State v. Johnson,* 68 N.J. 349, 346 A.2d 66, 18 Crim. L.Rptr. 2097 (1975) is misplaced. In *Johnson,* the New Jersey Supreme Court imposed a stricter test under the New Jersey State Constitution than required under the Fifth Amendment to the United States Constitution. Defendant has cited no authority that the Arizona Constitution requires that the record show that an in custody defendant knew that he had the right to refuse to consent to the search. Absent such authority, we are unwilling to apply a more stringent requirement under the Arizona Constitution than is imposed by the Fifth Amendment to the United States Constitution. Since defendant's consent was not per se involuntary, we direct our inquiry as to whether under all of the circumstances surrounding the consent, it was in fact involuntary.

In the current case, the defendant was in custody. The inherent coercion of being in police custody is, of course, a significant factor in determining the voluntariness of a consent. See *United States v. Rothman,* 492 F.2d 1260 (9th Cir. 1973). However, in the current case the defendant

was given the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In fact, he was given these warnings on two separate occasions while he was in custody. Also, when the police first apprehended the defendant, they asked if they could search his automobile. Prior to this search, he was advised that he had a right to refuse to allow the police to search the car. Accordingly, it appears that appellant was at one point informed of his right to refuse to consent to a search.

Further, he was "repeatedly" advised that "he didn't have to do anything that he didn't want to." Finally the consent to the search was in the context of a confession to the crime. The degree of affirmative assistance given to the police is relevant in determining whether consent exists. *State v. Sherrick,* 98 Ariz. 46, 402 P.2d 1 (1965). Because the defendant voluntarily confessed that he committed the crimes and actively assisted the police in their search, this evidence would support a conclusion that the defendant voluntarily consented to the subsequent search of his room. See authorities cited, Annot., 9 A.L.R.3d 858, 883 (1966).

We therefore conclude that the evidence supports the trial court's determination that the defendant's consent to the search was voluntary and was not coerced, and that the evidence found as a result of that search was admissible.

Next, defendant claims that the trial court did not make a sufficient finding on the record that defendant's confession was voluntary. The voluntariness issue was raised in the form of a motion to suppress appellant's statements, which was heard contemporaneously with a motion to dismiss and a motion to suppress in court identification. The trial court conducted a hearing prior to the trial on these motions, but at the conclusion, failed to make a specific finding, but rather stated, "I will deny those motions." In its subsequent minute order, the court ruled: "It is Ordered that the motion to suppress statement is denied."

The lack of specificity alleged is the failure to state that the confession was voluntary.

■ It is well established that a statement may be admitted for consideration by the jury only if the trial judge makes a definite determination that the statement was voluntary. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *State v. Costello*, 97 Ariz. 220, 399 P.2d 119 (1965). Our Supreme Court has always insisted that the trial court follow the strict requirements of *Jackson* in making this determination. *State v. Marovich*, 109 Ariz. 45, 504 P.2d 1268 (1973); *State v. Ramos*, 108 Ariz. 36, 492 P.2d 697 (1972); *State v. Mileham*, 100 Ariz. 402, 415 P.2d 104 (1966).

As was stated in *Marovich, supra*:

"His [Attorney General] argument is that the judge's over-ruling of the motion to suppress was tantamount to a finding of voluntariness, and that to require the ruling to be a finding of voluntariness in so many words 'is to enshrine form over substance.' The argument is persuasive where it is clear that the judge understood *Jackson v. Denno, supra*, and merely worded his ruling badly. . . . In any event, we think that having repeatedly followed the strict requirements of *Jackson v. Denno, supra*, from its decision right up to this year, we should not overrule the cases cited above." 109 Ariz. at 46, 504 P.2d at 1269.

■ However, there are two separate and distinct procedures which may be followed in situations where the trial court does not make a definitive ruling. We may either remand the case for a new trial, or remand the case to the trial court for a determination of whether the statements were voluntary. *Mileham, supra*. Our Supreme Court has held that "each case must stand on its own facts as to whether it should be remanded to the trial judge for a limited hearing to determine whether a confession is voluntary or whether a new trial should be granted." *State v. Simoneau*, 98 Ariz. 2, 401 P.2d 404, 408 (1965). The underlying factor in deciding whether a case should be remanded for a hearing as opposed to remanded for a new trial appears to be whether the trial court conducted a hearing out of the presence of the jury as to the voluntariness of the confession. See *Mileham, supra*; *Simoneau, supra*; *State v. Tannahill*, 100 Ariz. 59, 411 P.2d 166 (1966), *cert. den.*, 390 U.S. 909, 88 S.Ct. 833, 19 L.Ed.2d 877 (1968); *State v. Maloney*, 101 Ariz. 111, 416 P.2d 544 (1966).

■ In the current case, a hearing was held and the trial court heard arguments specifically directed to the issue of whether the confession was voluntary. Therefore, we feel it is not necessary for us to reverse the case for a new trial, but rather to remand the case for a determination of whether the confession was voluntary.

■ The State argues that even assuming that error is present, it is harmless error because of the overwhelming evidence against appellant and that we need not remand the case even for a determination of voluntariness. In another case, this might be appropriate. *See State v. Marovich, supra*. In fact, if appellant's sole defense to the charge was a denial of committing the acts, we might be disposed to follow this course. However, appellant's confession in the current case could also have influenced the jury regarding his insanity defense. The fact that appellant confessed his motives for doing so, and the manner of his confession all bore upon his claim of insanity. In fact, the prosecutor in his closing arguments referred to appellant's confession in support of the State's argument that appellant was not insane at the time of committing the acts. Accordingly, we cannot say that the admission of the confession, if it was involuntary, was harmless error.

Therefore, this case is remanded to the Superior Court of Maricopa County for the purpose of a determination of whether confession of the defendant was voluntary. If the court finds the confession was voluntary, it is to notify this Court by transmitting a certified copy of its minute entry

to the Clerk of this Court. If no objection to the ruling is presented to this Court within fifteen days thereafter, an order will be entered affirming the conviction. If the lower court determines the confession involuntary, it is directed to enter an order granting defendant a new trial.

Defendant's next contention is that the trial court erred in instructing the jury that "the presumption of law is that every person charged with a crime is sane and the presumption therefore is that the defendant was sane when he committed the act." After the trial court instructed the jury as to this presumption, it immediately instructed the jury as follows:

> "In considering the mental state of the accused, the jury must always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
>
> "Under the defendant's plea of not guilty by reason of insanity, there is an issue as to his sanity at the time of the alleged offense.
>
> "The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essential to the commission of a crime.
>
> "You may determine from the evidence whether the defendant was sane at the time the crime was committed.
>
> "The State must prove beyond a reasonable doubt that the defendant was sane."

 The general rule in Arizona is that a defendant is presumed to be sane, but when the defendant introduces sufficient evidence to raise a doubt as to his insanity under the McNaughten Rule, it becomes the State's burden to prove the sanity of the defendant beyond a reasonable doubt. *State v. Sisk*, 112 Ariz. 484, 543 P.2d 1113 (1975). In the current case, the defendant presented expert testimony to the effect that he was legally insane at the time of the crime. Although the State presented an expert witness to rebut this testimony, it appears and the State apparently concedes that insanity was legitimately raised as an issue and accordingly, the State was required to prove the defendant's sanity beyond a reasonable doubt. The defendant contends under this state of affairs the presumption of sanity vanishes and to instruct the jury that the presumption still exists is error.

 This issue has been decided adversely to the defendant in the case of *State v. Daniels*, 106 Ariz. 497, 478 P.2d 522 (1970). In *Daniels*, the defendant presented a psychiatrist who testified that the defendant "was not able to be held responsible for knowing what was right or wrong at the time [of the crime]." The State did not present any expert testimony to the contrary. Nonetheless, the trial court instructed the jury that there was a presumption that defendant was sane when he committed the act.

On appeal, Daniels argued, as does the defendant in the current case, that the presumption of sanity vanishes when the defendant makes insanity an issue. Our Supreme Court rejected appellant's contention, holding:

> "If a defendant introduces sufficient evidence to raise a doubt as to his sanity under the Rule of M'Naghten the burden of the State is to establish beyond a reasonable doubt the converse [citations omitted]. In its efforts to do so, the State is aided by the presumption of sanity since statutory presumptions do not vanish as do presumptions of law or fact. [citations omitted]
>
> \* \* \* \* \* \*
>
> "Whether a doubt was raised in the minds of the jury to rebut the presumption of sanity cannot be determined by the court. The weight to be given the evidence is a question for the jury. Therefore, the jury was properly instructed to the effect that a reasonable doubt of defendant's sanity at the time of the crime should be resolved in favor of defendant, and, if a reasonable doubt is found, it should return a verdict of

not guilty. It is not inconsistent for a court to instruct that there is a presumption of sanity . . . ." 106 Ariz. at 502, 478 P.2d at 527.

This appears to be the majority view in the United States. *See Virgin Islands v. Bellott*, 495 F.2d 1393 (3rd Cir. 1974);[2] *Keys v. United States*, 120 U.S.App.D.C. 343, 346 F.2d 824 (1965), *cert. denied* 382 U.S. 869, 86 S.Ct. 144, 15 L.Ed.2d 108 (1966); *State v. Lass*, 228 N.W.2d 748 (Iowa, 1975); *People v. Silver*, 33 N.Y.2d 475, 354 N.Y.S.2d 915, 310 N.E.2d 520 (1974); *State v. Wilson*, 85 N.M. 552, 514 P.2d 603 (1973). *Daniels* has been recently cited with approval by our Supreme Court, *State v. Noble*, Ariz., 546 P.2d 1130 (filed March 9, 1976), and by the Iowa Supreme Court in *Lass*. In light of the express holding in *Daniels* and the general acceptance of that holding by other jurisdictions, we cannot hold that the trial court committed reversible error in the current case.

However, in our opinion, if the purpose of the instruction on sanity is to give the State the aid of the presumption of sanity, the instruction given in this case may confuse rather than aid the jury. Under the given instruction, there is no explanation of the effect of the presumption with regard to other evidence or how it can be overcome by the defendant. In fact, the bare instruction that a presumption exists may create the impression in the jury's mind that the defendant has the burden of proof on the issue. Although there is an instruction on the presumption of innocence and the burden of proof as to insanity being on the prosecution, there is no explanation of how the presumptions affect one another. Accordingly, we feel that a better instruction would be that common experience shows that most men are sane and thus presumed to be sane, and this fact may be taken in account along with all the other evidence in the case

in determining whether the state has proved beyond a reasonable doubt that the offense was not the consequence of insanity. See *Virgin Islands v. Bellott, supra; Rivers v. United States*, 270 F.2d 435 (9th Cir. 1959), *cert. denied*, 362 U.S. 920, 80 S.Ct. 674, 4 L.Ed.2d 740 (1960) (the presumption of sanity prevails "until the contrary is shown or until after a consideration of all the evidence you have a reasonable doubt as to the defendant's sanity"). Such an instruction would give the State the aid of the presumption of sanity while at the same time explaining the presumption's effect on the reasonable doubt standard. It would leave it to the jury to determine what weight the presumption should be given in each individual case. No such explanatory instruction was requested here.

Appellant also argues that this instruction shifts the burden of proof as to insanity from the prosecution and therefore violates the due process clause of the United States Constitution. In support of this argument he cites *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). However, *Mullaney* specifically approved the presumption of sanity described in *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). *Davis* held that the State is aided by the presumption even when contrary evidence is introduced.

Further, a presumption or inference does not shift the burden of proof, but only aids the State in maintaining its burden. *See State v. Travis*, Ariz.App., 545 P.2d 986 (2 CA-CR 703, filed January 27, 1976). In Arizona, once the issue of sanity is raised, the burden is on the State to establish it beyond a reasonable doubt. The existence of a presumption does not shift that burden.

For defendant's fourth ground on appeal, appellant contends that the Arizona speedy trial rules were violated. However,

---

2. Cases taking the contrary view are: *Otney v. United States*, 340 F.2d 696 (10th Cir. 1965); *People v. Saylor*, 319 Ill. 205, 149 N.E. 767 (1925); *People v. Moore*, 19 Ill.

App.3d 334, 311 N.E.2d 401 (1974); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A. 2d 627 (1974).

defendant raises this issue for the first time on appeal and did not make a timely motion to dismiss at the trial court level. Therefore, in the absence of other considerations, the defendant is deemed to have waived any violation of the rule. *State v. Adair*, 106 Ariz. 58, 470 P.2d 671 (1970); *State v. Lee*, 25 Ariz.App. 220, 542 P.2d 413 (1975).

■ Defendant's fifth contention is that the sentence of 60 to 99 years was excessive and an abuse of the court's discretion. However, each of the counts, except the lewd and lascivious count, could have resulted in life sentences. Further, the sentences could have been made to run consecutively rather than concurrently. Thus the sentences were well within the statutory limits. Our Supreme Court has stated:

> "The legislature has given the trial court broad discretion in sentencing a defendant for a period within the statutory minimum and maximum. Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate the defendant and his circumstances and to determine what action will most likely rehabilitate him to constructive activity. (citation omitted) Accordingly, this Court has consistently held that the pronouncing of a sentence is within the sound discretion of the trial court and that we will uphold a sentence if it is within the statutory limits unless there is a clear abuse of discretion. (citations omitted)" *State v. Smith*, 107 Ariz. 218, 219, 484 P.2d 1049, 1050 (1971).

*See* also *State v. Noles*, Ariz., 546 P.2d 814 (filed February 19, 1976).

In the current case, defendant's insanity defense was rejected by the jury and he was found competent to stand trial by the trial judge. Further, he was convicted of particularly brutal crimes. In light of the circumstances, we cannot say that the trial court abused its discretion in its sentencing.

Defendant's final contention on appeal is that there was not sufficient evidence to support the rape charge of one of the victims. He bases this contention on the testimony of a physician who examined the victim a few hours after the rape who testified that the victim's hymen was still intact and that there were no signs of vaginal or introital trauma.

■ The law in Arizona is well-established that penetration of the vulva no matter how slight, is necessary before a person can be convicted of rape. *State v. Jackson*, 109 Ariz. 559, 514 P.2d 480 (1973). In *State v. Pollock*, 57 Ariz. 415, 114 P.2d 249 (1941), the examining physician testified that the condition of the victim at the time of the examination was such that he did not think the crime of rape could have been completed upon her at the time she claimed. However, the physician defined rape as complete penetration of and emission in the vagina. The court stated that this is not the legal definition of rape and held that the slightest penetration of the vulva is sufficient to complete the offense. In light of this definition, the court held that the victim's testimony was sufficient to establish the crime.

In the current case, the physician testified that penetration of about one inch would be required to break the hymen. The victim testified positively that defendant penetrated her vagina and that this penetration was "about a half an inch". In addition, the victim's sister who was present at the time of the crime testified that the defendant placed his body on top of her sister and that her sister said "it hurt".

■ In light of the foregoing facts, we feel that penetration was physically possible on the victim without the breaking of the hymen and that the question of whether the rape was complete was properly a question for the jury.

This cause is remanded for a finding on the voluntariness of confession and thereafter for proceedings consistent with this opinion on remand.

SCHROEDER and WREN, JJ., concur.