555 P.2d 655

**STATE of Arizona, Appellee,**

v.

**Roy Louis RODRIQUEZ, Appellant.**

**No. 2944–2.**

Supreme Court of Arizona,

En Banc.

Sept. 28, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Robert A. Wertsching, Phoenix, for appellant.

HAYS, Justice.

Appellant, Roy Louis Rodriquez, was indicted on the charge of assault with intent to commit murder in April, 1972, in connection with the shooting of a sheriff's deputy. He was convicted thereof by a jury in February, 1973. A motion for a new trial, timely made, was never ruled on until appellant filed a petition for post-conviction relief in August, 1975. The petition was granted and a ruling finally made on the motion for a new trial. That ruling was adverse to appellant and from that order and resentence of twenty-five years to life he appeals. We have jurisdiction pursuant to the Arizona Constitution, art. 2, §

24, art. 6, § 5, and A.R.S. §§ 12–120.-21(A)(1) and 13–1711.

On or about August 19, 1971, appellant, a 17-year-old youth, escaped from Ft. Grant Training Center. He fled north with two companions, Abelino Rodriquez, his youthful uncle, and Fernando Nunez, another 17-year-old Ft. Grant escapee. They were stopped in Wickenberg, Arizona, by Deputy Ralph Bell of the Maricopa County Sheriff's Department. Deputy Bell suspected the three were juvenile runaways, a problem in Wickenberg, which is on the way to California.

After determining that the driver, Nunez, had no driver's license, that no registration could be produced for the El Camino truck they were driving and that none of the three youths had any identification, Deputy Bell advised them they would have to follow him back to the Wickenberg substation to be checked out. He then got back in his patrol car and attempted to advise authorities at the substation of the situation. He was unsuccessful because his radio was not working properly.

At this point, Nunez, the driver, came back to give Deputy Bell what appeared to be a temporary driver's license. Bell stuck the paper on his clipboard, turned to look up at Nunez and, at the same time, saw something move in-between his vehicle and the El Camino parked in front of it. As he turned to see what it was, he was shot in the head.

Although pushed over on the seat by the impact, Deputy Bell remained conscious. He then heard four clicks of a gun misfiring or "dry firing," a sound he was familiar with from range practice experience. After that, he heard an engine "rev up" and a car take off, with gravel spattering his own vehicle.

The deputy managed to get off a distress signal by radio and he was eventually taken to Barrow Neurological Institute in Phoenix. He survived, miraculously, and testified for the state at appellant's trial.

Meanwhile, the three youths proceeded to Wenden, Arizona, where they attempted to steal a car. In the process they assaulted a woman and murdered one of her neighbors. At the time of appellant's trial, he had already been convicted of this felony murder and was serving a sentence therefor.

After the activities in Wenden, appellant and Nunez fled on foot into the desert beyond there. They spent two days in the desert evading the posse which had been formed to track them. During this time the temperatures in the desert were definitely over 100° Fahrenheit. However, it rained heavily the first night and sometime during the second day.

Successfully evading the posse, appellant and Nunez hitched a ride to Blythe, California, where they were finally arrested on August 21, 1976, the morning after their two-day trek in the desert.

At approximately two o'clock in the afternoon on the 21st, Detective David Arellanes and Sgt. Ed Calles, of the Maricopa County Sheriff's Department, interviewed appellant. During that interview he gave a confession with regard to the assault on Deputy Bell, and a complete statement as to the three youths' activities from the time he escaped from Ft. Grant to the time they were arrested.

On appeal, appellant raises these issues:

1. Was appellant's inculpatory statement given voluntarily, knowingly and intelligently?

2. Was the failure to suppress the victim's in-court identification reversible error?

3. Was the court's instruction on malice incorrect?

4. Was appellant forced to take the witness stand in violation of the Fifth Amendment?

The first two issues are raised in a brief filed by appellant's counsel pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The second

two are raised in a pro per, supplemental brief by appellant himself.

## VOLUNTARINESS OF STATEMENT

The evidence before the trial court at a hearing to suppress appellant's statement consisted primarily of testimony from Detective Arellanes and Sgt. Calles, and from the appellant. Both the officers testified that, despite appellant's two days in the desert, he had no apparent injuries, did not appear to be suffering from heat exhaustion or exposure, made no complaints about his physical condition, did not appear tired or sleepy and, in fact, appeared very normal and relaxed. He never requested an attorney.

The officers also testified that appellant was read his rights from a standard Miranda card. After each right was read, he was asked if he understood it and acknowledged he did. He was also advised he could be remanded to adult court and tried there, and he said he understood that also Before they had ever read appellant these rights, the officers testified they had advised him they wanted to discuss with him the shooting of a sheriff's deputy. It was their testimony that, immediately after being advised of his rights, appellant volunteered, "Yeah, I am the one who shot the cop and the one who shot Tidwell." (Tidwell was the man shot and killed in Wenden, Arizona).

The officers testified that no threats, promises or coercion were used on appellant and that, in fact, no questions were even asked of him before the admission was made.

Further evidence before the judge was that appellant probably had breakfast that day and definitely had lunch, that appellant spoke English very well, had completed the eighth grade in school, and that he had a juvenile record sufficient to show many prior contacts with law enforcement agents and agencies.

Appellant's evidence consisted only of his own testimony that he had not slept for three nights, had water only once while in the desert, was scratched, tired and sleepy, and didn't understand that a lawyer would be appointed for him if he couldn't afford one.

Finally, there was testimony from the officers that neither of them tried to contact appellant's parents, and although they thought one of the other officers present might be doing so, they did not delay the interview to see if the parents would be contacted.

The test in Arizona, to determine the voluntary, knowing and intelligent waiver of the right to remain silent by a juvenile is the "totality of circumstances" test. *State v. Taylor,* 112 Ariz. 68, 537 P. 2d 938 (1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976). The presence of parents or their consent to a waiver of rights is only one of the elements to be considered by the trial court in determining whether the juvenile's statement was voluntary and the juvenile intelligently comprehended his rights. *State v. Hardy,* 107 Ariz. 583, 491 P.2d 17 (1971).

The trial judge had the opportunity to observe, first-hand, the witnesses and their demeanor. Determining from that, and all the evidence presented, that the statement was given knowingly, voluntarily and intelligently, we cannot disagree. The trial judge's determination that a statement is voluntary and admissible will not be disturbed on appeal unless there is clear, manifest error. *State v. Sanders,* 101 Ariz. 410, 420 P.2d 281 (1966); *State v. Edwards,* 111 Ariz. 357, 529 P.2d 1174 (1974).

We hold that, under the "totality of circumstances" test, there was no clear, manifest error in the trial court's finding.

## FAILURE TO SUPPRESS IN–COURT IDENTIFICATION

Appellant argues that the victim, Deputy Bell, should not have been allowed to make an in-court identification of the appellant because of two previous out-of-court photo identifications which appellant contends

impermissibly tainted the in-court identification.

 We find that any possible error in allowing the in-court identification by the victim was rendered completely harmless by appellant's waiver of a Dessureault hearing [104 Ariz. 380, 453 P.2d 951 (1969)] and reliance instead, on the motion pleadings, and by the presentation of the defense case. In testimony, two defense witnesses, including appellant, placed appellant at the scene of the assault.

### MALICE INSTRUCTION

 The record reveals no defense objection to the malice instruction given by the trial court. Absent fundamental error, an objection not made to the trial court cannot be argued on appeal for the first time. *State v. Goldsmith,* 112 Ariz. 399, 542 P.2d 1098 (1975). We find no fundamental error in the instruction given, as it complies with the Recommended Arizona Jury Instructions definition of malice, and therefore reject this argument.

### FIFTH AMENDMENT VIOLATION

 Appellant argues as follows: because the trial court found his statements to be admissible, he was forced to take the stand "in an attempt to balance and correct what he viewed as improper admission of his confession."

The view of appellant with regard to admissibility of his confession being incorrect, we can only refer to *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), in reply to this argument.

"A defendant who chooses to testify waives his privilege against compulsory self-incrimination . . . and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him." 88 S.Ct. at 2010.

As we have previously said,

"Defendant made a strategic decision . . ., a voluntary act, which in no way infringed his right of privilege against self-incrimination." *State v. Corley,* 108 Ariz. 240, 244, 495 P.2d 470, 474 (1972).

Having thoroughly searched the record on review for further error, and finding none, the judgment and sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.