576 P.2d 143

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. J–84357.**

**No. 1 CA–JUV 57.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 16, 1978.

Review Denied March 21, 1978.

Charles F. Hyder, Maricopa County Atty. by C. O. Lamp, Deputy County Atty., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

WREN, Judge.

A petition for determination of delinquency was filed against the juvenile appellant on January 24, 1977, alleging eight counts involving various acts of burglary and theft in the Cave Creek area. An adjudication hearing was held on June 28, 1977 at which time three of the counts were dismissed. After hearing the evidence the court held that the State had proven beyond a reasonable doubt that appellant was a delinquent child. On September 29, 1977 a disposition hearing was held and appellant was placed under supervised probation. He was released to the custody and care of his mother.

At the adjudication hearing several property owners testified about their discovery of missing property and its value. Appellant was linked to each of the counts by his statements to the investigating officers in which he admitted committing the offenses. The admissibility of these statements is the subject of this appeal.

Prior to the adjudication hearing appellant moved to suppress the statements and a suppression hearing was held on April 27, 1977. Detective Barrett of the Maricopa County Sheriff's Office testified that he had received information that appellant may have been involved in some burglaries he was investigating. A juvenile matching appellant's description had been observed leaving the site of an attempted burglary about a quarter mile from his home. Although he did not believe that he had probable cause to arrest appellant he decided to question him. Barrett and Reserve Deputy John Hilberg went to appellant's house and told his mother that they would like to talk to him about some burglaries in the area. Appellant was sleeping in the living room and she woke him up. The mother then left to go to the store. It was Barrett's recollection that he did not ask her to leave.

Barrett told appellant that they were investigating a series of burglaries and that they had an idea he might be involved. He mentioned a particular burglary at a neighbor's house and appellant informed them that he had done it. The detectives then ceased questioning and asked appellant to come to the sheriff's office with them. They left a note for appellant's mother, telling her where they were and that they would return her son home in an hour and a half. Barrett testified that appellant was

not in custody during the initial questioning at his home.

Appellant accompanied the officers to their office where he was read standard *Miranda* warnings from a rights card. Appellant signed the card and stated that he understood his rights and would answer questions. Appellant and the officers then went through each of the burglaries under investigation. The interview was taped and the court listened to the entire tape during the course of the suppression hearing.

Barrett testified that he promised appellant that he would not arrest him and take him to the juvenile home. He said, however, that these promises were not conditioned in any way on appellant's talking to them. Barrett used no force or threats.

Appellant and his mother agreed in broad outline with the sequence of events to which Detective Barrett testified but their recollection differed in some respects. For example, appellant testified that during the initial interview at his house he was told that if he cooperated no charges would be brought against him. If, on the other hand, he did not cooperate, charges would be filed. It was his understanding that he was merely helping the officers "clean out their file". He also testified that Barrett asked his mother to leave the room while they talked although he did not believe she was ordered to leave. Finally, appellant testified that he was told that he would not be arrested if he cooperated.

Appellant's mother also testified that she was asked to leave when the officers first arrived at her house. She recalled that she was still at home in her bedroom when the officers took her son to the station for further questioning and that they asked for her consent before they left. She did not recall finding any note from the deputies. She was also under the impression that there would be no charges and that the officers were merely clearing up their files. She recalled what happened when Deputy Hilberg brought her son back from the station:

"Q. Did he say anything to you when he brought [The Juvenile] home?

A. Oh, yes. He came in and said that Detective Barrett was busy and could not bring him back. He reassured me again that everything was all right and there were no charges. He put his arm around [The Juvenile] and said, 'I am sure being able to talk things over has helped him. You and your mother will be able to face the new things you have to go through together, now that everything is cleared up.' "

At the close of evidence the court entered the following order:

"Having considered the evidence and demeanor and credibility of witnesses, it is ordered denying the Motion to Suppress."

There is no explicit ruling in the record that the statements were voluntary. Ordinarily an order denying the motion to suppress is not regarded as sufficient compliance with the requirement of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) that a statement may be admitted only if the trial judge makes a definite voluntariness determination. *State v. Marovich,* 109 Ariz. 45, 504 P.2d 1268 (1973); *State v. Knaubert,* 27 Ariz.App. 53, 550 P.2d 1095 (1976). However, in the context of this case we are convinced that the court's ruling is sufficient compliance.

█ We note at the outset that although appellant was afforded a voluntariness hearing prior to the adjudication proceeding, such a hearing is not constitutionally required in a juvenile proceeding where the court and not a jury sits as a fact finder. In *Jackson v. Denno,* the Supreme Court found constitutionally inadequate a New York procedure in which the jury not only decided guilt or innocence but also made the voluntariness determination. Jurors were instructed to consider the confession in arriving at a verdict only if they found, on the basis of the evidence, that it was voluntary. The foundation for the Supreme Court's ruling in *Jackson* was its belief that lay jurors could not effectively separate the voluntariness determination from the decision on guilt or innocence. The Supreme Court noted that a "jury . .

may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession," and they expressed a belief that "matters pertaining to the defendant's guilt will infect the jury's findings of fact bearing upon voluntariness, as well as its conclusion upon that issue itself." *Jackson v. Denno,* 378 U.S. at 382–383, 84 S.Ct. at 1783–1784, 12 L.Ed.2d at 918–919. The constitution requires "only a reliable determination on the voluntariness issue". *Id.* 308 U.S. at 387, 84 S.Ct. at 1786, 12 L.Ed.2d at 922. "[T]he evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness. . . . As a consequence it cannot be assumed . . . that the jury reliably found the facts against the accused." *Id.* at 308 U.S. at 386–387, 84 S.Ct. at 1786, 12 L.Ed.2d at 921.

In a juvenile adjudication proceeding in which the judge rather than a jury is the fact finder, none of these fears would be materialized. It is generally held that *Jackson's* separate hearing requirement does not extend to bench trials. *United States v. Martinez,* 555 F.2d 1269 (5th Cir. 1977); *United States ex rel. Placek v. State of Illinois,* 546 F.2d 1298 (7th Cir. 1976); *People v. Fulz,* 32 Ill.App.3d 317, 336 N.E.2d 288 (1975); *People v. Brown,* 24 N.Y.2d 168, 299 N.Y.S.2d 190, 247 N.E.2d 153 (1969); *Akers v. Commonwealth,* 216 Va. 40, 216 S.E.2d 28 (1975). *Contra United States ex rel. Spears v. Rundle,* 268 F.Supp. 691 (E.D. Pa.1967); *aff'd. on other grounds* 405 F.2d 1037 (3rd Cir. 1969) and *United States ex rel. Owens v. Cavell,* 254 F.Supp. 154 (M.D. Pa.1966). The courts in so holding rely upon the presumption that a trial judge is presumed to rely upon only relevant and admissible evidence in reaching a verdict. *State v. Gonzales,* 111 Ariz. 38, 523 P.2d 66 (1974); *State v. Padilla,* 110 Ariz. 392, 519 P.2d 857 (1974). By virtue of this presumption we can assume that a trial judge, or a juvenile court judge sitting as fact finder, can put aside the irrelevant considerations of a confession's truthfulness when considering both the voluntariness issue and the ultimate issue of guilt or innocence; or, in this case, of delinquency.

It therefore appears that because he was given a voluntariness hearing, appellant was accorded more protection than the constitution actually requires. It is furthermore clear that the court's ruling denying the motion to suppress was sufficient compliance with *Jackson* in these circumstances. While the court need not have held a separate voluntariness hearing, it is nonetheless true that appellant was entitled to a "reliable and clear-cut determination of the voluntariness of the confession, . . ." *Jackson v. Denno,* 378 U.S. at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924. In *State v. Marovich,* the Arizona Supreme Court stated:

"The Attorney General ably and eloquently asks us to overrule some of these holdings, which he admits make the ruling in the instant case improper. His argument is that the judge's overruling of the motion to suppress was tantamount to a finding of voluntariness, and that to require the ruling to be a finding of voluntariness in so many words 'is to enshrine form over substance.' The argument is persuasive where it is clear that the judge understood *Jackson v. Denno,* supra, and merely worded his ruling badly. *But in the instant case, it is clear that the trial judge did not understand that the duty of finding the admission to be voluntary was his and his alone, since he said, when he ruled, that it was really up to the jury to make that determination.* In any event, we think that having repeatedly followed the strict requirements of *Jackson v. Denno,* supra, from its decision right up to this year, we should not overrule the cases cited above." (Emphasis added) 109 Ariz. at 46, 504 P.2d at 1269.

The *Marovich* exception applies where, even in the absence of specific findings, the record clearly shows "that a finding of voluntariness underlies the trial court's ruling . . . ." *State v. Mincey,* 115 Ariz. 472, 566 P.2d 273, 281 (1977), *cert. granted* 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977). We have no hesitation in holding on this record that such a finding of voluntariness was the basis of the juvenile court's

denial of the motion to suppress. Furthermore at the beginning of the adjudication hearing, appellant renewed his suppression motion which the court again denied.

"MR. CULBERTSON: I hope by your ruling I am not waiving the issue of voluntariness, which we have contested. THE COURT: Certainly not. I think the record may as well reflect you are not waiving in any way your objection to the introduction of statements, nor are you conceding in any way the statements made, whatever they may be, were voluntary. That is your position that they were not?

MR. CULBERTSON: Right."

The court thus made it explicitly clear that its ruling was based on a finding of voluntariness. Under these circumstances, the requirements of *Jackson* were met by the denial of the motion to suppress. *State v. Mincey; State v. Castoe,* 114 Ariz. 47, 559 P.2d 167 (1976).

Appellant argues that his statements should have been suppressed for four reasons:

1. The statements were obtained during questioning in the absence of appellant's parents or any juvenile court representatives.

2. Appellant was not initially advised of his rights under Rule 18, Juvenile Court Rules, 17A A.R.S. and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) [1].

3. Statements obtained after warnings were given were tainted by the previous failure to properly advise appellant of his rights.

4. The statements were induced by promises of the interrogating officers that no charges would be brought.

## I.

### QUESTIONING IN THE ABSENCE OF PARENTS

■ Appellant argues that since his statements were made outside the presence of his parents or juvenile authorities and without his parents' consent, they could not be used against him. It is well settled, however, that the absence of parents or lack of their consent to a waiver of rights is only one factor to consider in the "totality of circumstances" in evaluating voluntariness. *State v. Rodriquez,* 113 Ariz. 409, 555 P.2d 655 (1976); *State v. Taylor,* 112 Ariz. 68, 537 P.2d 938 (1975), cert. denied, 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976). There is no per se rule of exclusion where a juvenile is questioned outside the presence of his or her parents and we decline to reverse on this basis.

## II.

### JUVENILE RULE 18 AND MIRANDA WARNINGS

■ Appellant concedes on appeal that after being taken to the station house, he was given *Miranda* warnings. Detective Barrett read him the rights from a standard warning card which appellant signed. He told the officers that he understood his rights and would answer their questions.

Appellant argues, however, that no statements made by a juvenile are admissible into evidence unless the juvenile is also given the warnings required by Rule 18, Juvenile Court Rules of Procedure, 17A A.R.S.:

"No extra-judicial statement to a peace officer or court officer by the child shall be admitted into evidence in juvenile court over objection unless the person offering the statement demonstrates to the satisfaction of the court that: The statement was voluntary and before making the statement the child was informed and intelligently comprehended that he need not make a statement, that any statement made might be used in a court proceeding, and that he had a right to consult with counsel prior to making a

---

1. Appellant refers here in the notice of appeal to *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) which is a guilty plea case. It is obvious in context that appellant is relying on *Miranda* rather than *Boykin* and we proceed on that assumption.

statement and during the taking of the statement, and that, if he or his parents, guardian or custodian could not afford an attorney, the court would appoint one for him prior to any questioning."

We held, however, in *In Re Appeal in Maricopa County, Juvenile Action J–72773S,* 22 Ariz.App. 346, 527 P.2d 305 (1975) that the giving of Miranda warnings satisfies the requirements of Rule 18.

## III.

### POISONOUS FRUIT

The officers initiated questioning at appellant's home without giving *Miranda* warnings. Appellant argues that his initial statement that he had burglarized a neighbor's home was therefore obtained illegally. Relying on *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), appellant then argues that this illegality tainted the statements later obtained after *Miranda* warnings were given. However, application of the "poisonous fruit" doctrine requires the existence of an initial illegality and we find this precondition is lacking here.

▮▮▮▮ Police officers are required to give *Miranda* warnings only when a defendant is undergoing custodial interrogation. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). Custodial interrogation is defined as:

"[Q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

Based on this record, we cannot say that the warnings were required during appellant's initial questioning at home. Detective Barrett testified that appellant was not in custody. The only information linking appellant to criminal acts was the report of a witness that he had observed a person matching appellant's description leaving the

scene of an attempted burglary. Barrett had also heard from a friend that appellant's stepfather had said he thought that appellant was involved in some burglaries. However, suspicion of an individual is not enough in itself to require the giving of *Miranda* warnings. *State v. Wynn,* 114 Ariz. 561, 562 P.2d 734 (App.1977). Appellant testified that Detective Barrett told him he wanted to talk to him about some burglaries. The record shows that the questioning was in the investigatory rather than the interrogation stage and that warnings were therefore not required. *Beckwith v. United States· State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977); *State v. Landrum,* 112 Ariz. 555, 544 P.2d 664 (1976). Furthermore, the initial questioning occurred in the non-coercive atmosphere of appellant's own home. *State v. Hatton.* Under the circumstances of this case, we hold that *Miranda* warnings were not required and that therefore there was no initial illegality that could be exploited by the officers.

## IV.

### PROMISES OF IMMUNITY

Appellant finally argues that his confession was involuntary because it was induced by the officers' promise that no charges would be brought against him. Promise-induced confessions have been condemned by the Supreme Court of the United States:

" '[A] confession, in order to be admissible, must be free and voluntary; that is, . . . not . . . obtained by any direct or implied promises, however slight, . . .' " *Bram v. United States,* 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

The Constitution condemns promises which are used by law enforcement officers in an effort to elicit a confession from a person who is unwilling to make a statement:

"A coerced confession claim whether founded on a promise of immunity or otherwise, always involves this question: did the governmental conduct complained of 'bring about' a confession 'not freely self-determined'?" *Shotwell Manufactur-*

*ing Company v. United States,* 371 U.S. 341, 348, 83 S.Ct. 448, 453, 9 L.Ed.2d 357, 364 (1963).

At the suppression hearing, appellant described what happened when the officers arrived at his home:

"Q. Do you recall the first thing that Detective Barrett said to you?

A. He said he wanted to talk to me in reference of [sic] the charges.

Q. And did he use the term charges?

A. No, burglaries.

Q. Do you recall what you replied?

A. I said, 'Okay.'

Q. And do you recall what happened next?

A. Well, we sat down at the table and he told me that if I cooperated, there would be no charges pressed against me.

Q. Did he use the term charges?

A. Yes.

Q. And what did you understand him to mean when he said there would be no charges pressed?

A. That the people would not press charges or I would just help him clean out his files and that would be it.

Q. Did he use the term 'clean out his files'?

A. Yes.

Q. When did he say that?

A. He said it at my home and at the office."

Detective Barrett on the other hand testified as follows:

"Q. And at any time did you make any promises to [The Juvenile], you know, in regard with what would happen to him, if he talked to you?

A. The only promise I made to [The Juvenile] is that I wouldn't take him to the juvenile home and I would take him home, like I said I would.

Q. When did you say that?

A. At the house I told him I would bring him home. And I told him that up in the office.

Q. Did you say that conditional on him talking to you?

A. No, I already knew he was going to talk to me.

Q. How did you know he was going to talk to you?

A. Because he started freely at the house.

Q. So you never ever said you were going to take him down under any circumstances?

A. Down where?

Q. Down to the Detention Center?

A. No, I told him I wouldn't.

Q. And you never said you would arrest him?

A. I told him that I wouldn't arrest him at this time, no."

Officer Hilberg also described these events:

"We talked to [The Juvenile] for a few minutes and talked about the burglaries. [The Juvenile] said, yes, he was involved in some of them.

At that point we said, 'We better go up to our office. We have all the records up there of any burglaries that came on.' And we would like to take him up to the office and talk about it. He said, yes, he would be willing to go. We said, 'We aren't going to take you in and arrest you. We are not going to lock you up, take you downtown like a criminal, anything like that. We are just going up to talk.' He said he would go.

\* \* \* \* \* \*

"Q. Did you say anything to make him think he wouldn't be charged with these burglaries?

A. I don't think so, per se, except when we told him we were not going to arrest him and handcuff him and lock him up, but we did want to take him up to the office and talk. What his impression of that statement was, I don't know. We had no intention of arresting him, because we left a note saying that he was coming back home."

The testimony at the suppression hearing was admittedly in conflict but it was the trial court's duty to resolve it. *See State v. Winters,* 27 Ariz.App. 508, 556 P.2d 809 (1976). The court's resolution of such

conflicts and ultimate ruling will not be disturbed on appeal absent clear, manifest error. *State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976); *State v. Rodriquez,* 113 Ariz. 409, 555 P.2d 655 (1976). There is evidence in the record that appellant began confessing before promises of any kind were made, and there is evidence that the promises were not promises of immunity. Detective Barrett said the promises he made were not conditioned on appellant talking. Thus the officers did not "bring about" appellant's statements by their promises not to arrest him and bring him down to the detention center. *Shotwell Manufacturing Company v. United States. See Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). The record supports a finding that appellant did not rely on these promises in making his statements. *State v. Jordan,* 114 Ariz. 452, 561 P.2d 1224 (1976).

Affirmed.

EUBANK, P. J., and JACOBSON, J., concur.