791 P.2d 1070

**The STATE of Arizona, Appellee,**

v.

**Scott Thomas SCHOLTZ, Appellant.**

**No. 2 CA–CR 89–0508.**

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 6, 1990.

Review Denied May 30, 1990.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, Chief Counsel, and Jack Roberts, Phoenix, for appellee.

Aspey, Watkins & Diesel by Bruce S. Griffen, Flagstaff, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant, a juvenile at the time the alleged crimes were committed, was ordered transferred to superior court for prosecution as an adult and stipulated that the matter be decided by the court upon the record. The trial court found appellant guilty of premeditated murder, felony murder, armed robbery and theft. Appellant was sentenced to life imprisonment on the first two counts and concurrent terms of eight years and four years, respectively, on the remaining counts. He argues on appeal that the trial court erred (1) in finding his statements were voluntary, and (2) in applying a preponderance standard to determine voluntariness.

## FACTS

On September 26, 1987, the Yavapai County Sheriff's Office sent Detective Cullins to investigate a report that there was a board with nails sticking out of it and a blood covered baseball cap on Owl Slick Road. Upon arrival, Cullins found the board and followed blood-spattered drag marks to a ditch beside the road in which she found the body of a man with a single gunshot wound to the head.

On September 28, 1987, an investigator with the Yavapai County Attorney's Office, Saravo, contacted a neighbor of appellant's mother who reportedly had information about the shooting. That information implicated appellant and his friend. It was further reported that appellant and his friend had taken a truck to Phoenix and were staying with friends of appellant in Tempe. That address and phone number were relayed to the Tempe Police Department.

The Tempe Police Department dispatched an officer to that address. He drove past the home twice. The second time, he saw a truck belonging to the shooting victim in Yavapai County, which had been reported stolen. Appellant was outside the resi-

dence and was arrested in connection with the stolen truck. He was transported to the Tempe City Jail.

While appellant was being transported, his mother, attempting to reach her son, called the Tempe residence at which appellant had been staying and spoke with the arresting officer. While it is clear that appellant's mother was told he was being transported to the Tempe City Jail, the evidence is in conflict regarding whether she was informed that her son had been arrested and the nature of the charges against him. There is also conflicting evidence of appellant's mother's diligence in trying to reach her son. It is undisputed that she remained in Cottonwood and used her neighbor's phone for messages.

Once in custody, appellant was placed in a segregated cell away from adult prisoners, and after approximately two hours, appellant was questioned by the Tempe officer for about 15 minutes. He was read his Miranda rights from a juvenile rights form containing explanatory information in simplified language.[1] The form included a statement that a juvenile's case might be transferred to adult court for prosecution and a question asking the juvenile if he wished to have a parent or guardian present. It is undisputed that appellant indicated that he understood his rights and agreed to speak with the arresting officer. The evidence is conflicting as to whether he waived his right to have a parent or guardian present. It is undisputed that appellant was not advised that he was under suspicion of homicide.

The Yavapai County authorities were informed that appellant was in custody and Cullins and Saravo arrived at the Tempe Police Station to interview appellant about one and one-quarter hours after his interview with the arresting officer. Appellant was again advised of his Miranda rights and that he had the right to have a parent or guardian present, to which he responded: "Well, my Mom's in Cottonwood. As far as I know." Saravo then said: "Okay ... Ah, let me talk to you first shortly. Will you talk to us?" Appellant agreed.

During the interview, which lasted approximately one and one-quarter hours, appellant made inculpatory statements.

Appellant had dropped out of school after the 10th grade. During the transfer hearing, the state's expert testified that appellant was average in intellectual functioning and above average in abstract conceptual thinking without evidence of thought disorder or impaired judgment. The defense expert testified that appellant had a dependent personality. It is undisputed that appellant appeared calm and remained unemotional throughout the interview.

## VOLUNTARINESS

Appellant argues that the trial court should have suppressed his inculpatory statements because they were involuntary. He asserts that his age and the absence of a parent during questioning are extremely important factors in determining voluntariness. *In the Matter of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Appellant agrees that our courts have held that the presence or absence of parents at the time of confession is only one factor under the totality of circumstances test adopted in Arizona in determining the voluntariness of a juvenile's statements. See *State v. Rodriguez*, 113 Ariz. 409, 555 P.2d 655 (1976); *State v. Hardy*, 107 Ariz. 583, 491 P.2d 17 (1971); *Matter of Appeal in Maricopa County Juv. Action # J–84357*, 118 Ariz. 284, 576 P.2d 143 (App.1978).

Appellant contends that the absence of a parent or the failure to allow consultation with a parent or guardian prior to questioning should render a juvenile's inculpatory statements inadmissible. He cites support from jurisdictions outside Arizona for this proposition. Some of the cases cited are from jurisdictions which follow an "interested adult" rule in determining whether a juvenile's statements are voluntary. It is well-settled that such a per se rule of exclusion is not the rule in Arizona. *Matter of Appeal in Maricopa County Juv. Action*

1. See attachment.

*# J–84357*, supra. Cf. *State v. Crivellone*, 138 Ariz. 437, 675 P.2d 697 (1983).

Other cases cited from jurisdictions applying a totality of the circumstances rule involve fact patterns in which the juvenile either had a parent present or a parent had been contacted and advised of the charges. In those cases, that factor was among others which led the respective courts to their voluntariness findings based upon the totality of the circumstances. Under such a test, no one factor is controlling. Among the factors which may be considered are:

(1) The chronological age of the juvenile.

(2) The apparent mental age of the juvenile.

(3) The educational level of the juvenile.

(4) The juvenile's physical condition.

(5) The juvenile's previous dealings with the police or court appearances.

(6) The extent of the explanation of rights.

(7) The language of the warnings given.

(8) The methods of interrogation.

(9) The length of interrogation.

(10) The length of time the juvenile was in custody.

(11) Whether the juvenile was held incommunicado.

(12) Whether the juvenile was afforded the opportunity to consult with an adult.

(13) The juvenile's understanding of the offense charged.

(14) Whether the juvenile was warned of possible transfer to adult court.

(15) Whether the juvenile later repudiated the statement.

*State v. Benoit*, 126 N.H. 6, 15, 490 A.2d 295, 302 (1985).

The state responds that the trial court evaluated all the circumstances and there was no clear and manifest error requiring reversal. *State v. Crivellone, supra.* The trial court concluded in its minute entry that appellant had been advised of his Miranda rights and that the Tempe and Yavapai authorities had also fully complied with the requirements of Ariz.R.P.Juv.Ct. 18, 17B A.R.S. (Rule 18). The court found that appellant had knowingly, intelligently and voluntarily waived those rights and that the police had employed no promises, threats or coercion.

While the better practice would be specific findings of the factors leading the trial court to its determination that under the totality of the circumstances the juvenile's statements were voluntary, we believe a review of the record in the present case supports the trial court's finding, and accordingly affirm.

### QUANTUM OF PROOF

■ Appellant further argues that a clear and convincing evidence standard should be imposed on the state when the issue is whether a juvenile's statement is voluntary. That argument is supported by the general proposition that special care must be used in determining the voluntariness of juvenile confessions. See *In the Matter of Gault, supra; Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *Commonwealth v. Shaffer*, 303 Pa. Super 259, 449 A.2d 677 (1982); *State v. Caffrey*, 332 N.W.2d 269 (S.D.1983). He believes a clear and convincing standard of proof would ensure the special care needed before finding a juvenile's statement voluntary and admissible.

The state asserts that it would be anomalous on the facts in the present case to impose such a standard. The state argues that because appellant was transferred to adult court for prosecution following a four-day transfer hearing and a subsequent unsuccessful appeal of the transfer order, an adult standard of proof on the voluntariness question was appropriate.

Appellant's response is that he made the statement as a juvenile, and the voluntariness of the statement at that time should have been determined by a standard of proof applicable to juvenile statements. However, that standard of proof as set out in Ariz.R.P.Juv.Ct. 17(3), 17B A.R.S., is also by a preponderance of the evidence.[2]

2. Rule 17. Burden of Proof.

The burdens of proof in juvenile proceedings shall be:

*Haley* and *Gault* are cases decided, respectively, prior to and immediately following *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The extra care and caution they admonish is, in effect, recognizing a juvenile's right to Fifth Amendment protections against self-incrimination. Such protections are afforded a juvenile when there has been compliance with Rule 18. The giving of Miranda warnings satisfies the requirements of Rule 18. *Matter of Appeal in Maricopa County Juvenile Action No. J–84357, supra;* and *In re Appeal in Maricopa County Juvenile Action J–72773S,* 22 Ariz.App. 346, 527 P.2d 305 (1975). In the present case, the Miranda warnings were given by the Tempe police officer questioning appellant using the juvenile rights form attached to this opinion. He was further given his Miranda warnings prior to questioning by the Yavapai County authorities. Under the totality of the circumstances, we find no error.

The conviction and sentence is affirmed.

ROLL, P.J., and HOWARD, J., concur.

(1) Beyond a reasonable doubt, as to delinquency matters involving criminal offenses and incorrigibility;

(2) By clear and convincing evidence, as to matters concerning the termination of the parent-child relationship; and

(3) By a preponderance of the evidence, as to all other types of proceedings.

TEMPE POLICE DEPARTMENT
JUVENILE RIGHTS FORM

IR# 87-138431                                              Page 1 of 2

On 9-29-87 the listed juvenile, SCOTT THOMAS SCHOLZ DOB 6-1-71 was advised of his/her rights per Miranda by Officer LEAZOTTE of the Tempe Police Department. The rights were read as follows:

"You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney to assist you prior to questioning and to be with you during questioning if you so desire. If you cannot afford an attorney you have the right to have an attorney appointed for you prior to questioning. You may be remanded to adult court to be tried as an adult."

To ensure that the juvenile understood his/her rights the following questions were asked and the following statements obtained:

Do you understand your rights? "YA"

Will you voluntarily answer my questions? "SURE"

What grade are you in school? (NOT IN SCHOOL)

What kind of grades are you getting in school? ( N/A )

REGARDLESS OF THE JUVENILES ANSWER TO THE FOLLOWING QUESTIONS, THESE EXPLANATIONS WILL ALSO BE GIVEN.

What is an attorney? "A LAWYER"

An attorney is a lawyer or person who will speak for you and help you concerning the crime which we think you have done. ✓

What is a court? "A PLACE WHERE YOU GO TO GET TRIED"

A Court of Law is a place where a person or judge will decide whether you did (explain what the juvenile is suspected of). ✓

What does assist mean? "HELP"

Assist means to help or guide you. ✓

What does appointed mean? "THE COURT WILL GIVE YOU A LAWYER TO DEFEND YOU"

Appointed means to assign or give. ✓

What does prior mean? "BEFORE"

Prior means before. ✓

What does silent mean? "BE QUIET"

Silent means you do not have to say anything to me about this matter if yo
do not want to. ✓

If you want to answer questions now without a lawyer present, you may. Yo
will still have the right to stop answering my questions at any time.

Do you understand each of these rights? Yes ✓ No____

Do you want to have your parent(s) or guardian(s) present during
questioning? Yes____ No ✓

The possibility exists that your case may be handled by adult court. This
means that a juvenile judge may decide that you do not belong in juvenile
court because you are too old, have done a serious crime, or have done too
many crimes before this one. If you are taken to adult court, you may get
more punishment than you would receive in juvenile court. Do you
understand this? Yes ✓ No____

IF THE JUVENILE IS UNDER 14 YEARS OF AGE ASK THE FOLLOWING TWO QUESTIONS:

What is the difference between right and wrong?_____

Do you know that what you did was wrong?_____

OFFICER'S SIGNATURE _____ 9822 ___DATE/TIME 9-28-87 20:

LOCATION OF INTERVIEW TEMPE CITY JAIL